No. 25-1475

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

Leticia Roberts, Calvin Sayers;
*Plaintiffs-Appellants*

v.

Sheriff Tony Thompson, in his official capacity as Black Hawk County Sheriff; and
Black Hawk County;
*Defendants-Appellees*

On Appeal from the United States District Court
for the Northern District of Iowa
No. 6:24-cv-2024 (Hon. C.J. Williams)

**BRIEF OF PLAINTIFFS-APPELLANTS**

Charles Moore
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
T: (202) 861-5226
cmoore@publicjustice.net

Rita Bettis Austen
Thomas Story
Shefali Aurora
ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Suite 808
Des Moines, IA 50309-2317
T: (515) 207-0567
rita.bettis@aclu-ia.org
thomas.story@aclu-ia.org
shefali.aurora@aclu-ia.org

*Counsel for Plaintiffs-Appellants*
(additional counsel listed on signature block)

i

## SUMMARY OF THE CASE AND STATEMENT ON ORAL ARGUMENT

Defendants-Appellees Sheriff Tony Thompson and Black Hawk County ("Defendants") seize money from individuals detained at the Black Hawk County Jail and demand further payment without providing any process whatsoever. Defendants collect room and board and booking fees (collectively, "jail fees") using coerced confession of judgment documents signed by individuals while in custody at the jail. Defendants seized $75 from Plaintiff Calvin Sayers; demanded an additional $4,340 from him; and assessed Plaintiff Leticia Roberts $730 in jail fees. Defendants provided Plaintiffs no notice or opportunity to be heard on their jail fees, thereby denying them due process of law following the deprivation of their property.

The district court dismissed Plaintiffs' First Amended Complaint (the "FAC") for lack of standing and, alternatively, failure to state a claim for a violation of procedural due process (Count 1). This Court should reverse the district court's dismissal on the basis of standing, vacate the court's unfounded and premature factual findings, and remand for further proceedings on Count 1. If the Court affirms the dismissal of Count 1 for lack of standing, it should vacate the remainder of the district court's opinion and reverse the district court's denial of Plaintiffs' post-dismissal motion for leave to amend the pleadings.

Given the complexity of the constitutional issues raised in this appeal, Plaintiffs request 15 minutes for oral argument.

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ................................................................1

STATEMENT OF ISSUES ..........................................................................1

INTRODUCTION ......................................................................................2

STATEMENT OF THE CASE......................................................................6

    I.     Defendants Assessed Jail Fees and Demanded Payment from Plaintiffs. ...........................................................................................6

    II.    Defendants Use a Variety of Tactics to Collect Jail Fees......................9

    III.   Procedural History....................................................................11

SUMMARY OF THE ARGUMENT ............................................................14

ARGUMENT ..........................................................................................14

    I.     Standard of Review. ................................................................14

    II.    Plaintiffs Have Standing to Bring a Procedural Due Process Claim. ....................................................................................16

        A.     The District Court Properly Concluded Plaintiffs' Loss of Money Constituted an Injury-in-Fact but Did Not Assess Other Injuries...............................................17

        B.     The District Court Erred in Holding that Plaintiffs Failed to Plead Causation. ...................................................19

            1.     The district court's failure to accept Plaintiffs' allegations as true and draw all reasonable inferences in Plaintiffs' favor infected its causation analysis. .......................................................20

            2.     The district court improperly considered the merits of Count 1 as a part of its causation analysis. ...............24

            3.     The district court failed to consider that Defendants caused the other non-monetary injuries alleged: the loss of rights and the risk of imminent harm. ..................................................................27

            4.     Defendants caused Plaintiffs' injuries. ..........................30

        C.     Plaintiffs' Requests for Damages, Injunctive Relief, and Declaratory Relief Sufficiently Established Redressability................................................................32

      D.       If this Court Affirms the District Court's Standing Decision, It Must Vacate the Rule 12(b)(6) Decision as an Excess of Jurisdiction. ........................................37

III.    The District Court's Alternative Holding that Plaintiffs Failed to State a Procedural Due Process Claim Was Erroneous.......................38

      A.       The District Court Erroneously Held There Was No Deprivation Because It Inappropriately Found Plaintiffs Voluntarily Paid Jail Fees. ....................................39

      B.       Plaintiffs Stated a Claim by Alleging that Defendants Provided No Process Whatsoever..........................................45

IV.    The District Court Erred in Denying Leave to Amend the Pleadings Solely on the Basis of Delay..............................................49

CONCLUSION ...............................................................................................53

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*,
858 F.3d 561 (8th Cir. 2017) ...................................................................41

*Am. Farm Bureau Fed'n v. U.S. Env't Prot. Agency*,
836 F.3d 963 (8th Cir. 2016) ...................................................................16

*Andrus v. Allard*,
444 U.S. 51 (1979)...................................................................................41

*Angarita v. St. Louis Cnty.*,
981 F.2d 1537 (8th Cir. 1992) .................................................................43

*Ash v. Anderson Merchs., LLC*,
799 F.3d 957 (8th Cir. 2015) .......................................................50, 51, 52

*Ash v. Anderson Merchs., LLC*,
No. 14-cv-00358-DW, 2014 WL 11394891 (W.D. Mo. July 2,
2014) ........................................................................................................51

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................15

*Baldwin v. Hale*,
68 U.S. 223 (1863)...................................................................................46

*Bd. of Regents of State Colls. v. Roth*,
408 U.S. 564 (1972).................................................................................41

*Becker v. N.D. Univ. Sys.*,
112 F.4th 592 (8th Cir. 2024) ..................................................................33

*Bennett v. Spear*,
520 U.S. 154 (1997)...............................................................................5, 15

*Berry v. Hennepin Cnty.*,
No. 20-cv-2189, 2021 WL 4427215 (D. Minn. Sept. 27, 2021) ...............48

*Booker v. City of St. Louis*,
309 F.3d 464 (8th Cir. 2002) ...............................................................40

*Brewer v. Chauvin*,
938 F.2d 860 (8th Cir. 1991) ................................................................34

*Brooks v. City of Des Moines*,
844 F.3d 978 (8th Cir. 2016) ................................................................28

*Burns v. Pa. Dep't of Corrs.*,
544 F.3d 279 (3d Cir. 2008) .................................................................41

*C. Line, Inc. v. City of Davenport*,
957 F. Supp. 2d 1012 (S.D. Iowa 2013) ...............................................48

*Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*,
37 F.4th 1357 (8th Cir. 2022) ..............................................................34

*Carey v. Piphus*,
435 U.S. 247 (1978) .......................................................................25, 33

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ..............................................................................29

*Cmty. Thrift Club, Inc. v. Dearborn Acceptance Corp.*,
487 F. Supp. 877 (N.D. Ill. 1980) ........................................................48

*Croft v. Westmoreland Cnty. Child. & Youth Servs.*,
103 F.3d 1123 (3d Cir. 1997) ...............................................................44

*D.H. Overmyer Co. v. Frick Co.*,
405 U.S. 174 (1972) .......................................................................*passim*

*Davis v. Wash. Univ. in St. Louis*,
960 F.3d 478 (8th Cir. 2020) ................................................................20

*Disability Support Alliance v. Heartwood Enters., LLC*,
885 F.3d 543 (8th Cir. 2018) ................................................................50

*Dolan v. City of Tigard*,
512 U.S. 374 (1994) ..............................................................................41

*Elder v. Gillespie,*
54 F.4th 1055 (8th Cir. 2022) ...............................................47

*Enter. Fin. Grp. v. Podhorn,*
930 F.3d 946 (8th Cir. 2019) ...............................................18

*Farrar v. Hobby,*
506 U.S. 103 (1992)...............................................33

*Flagg Bros. Inc. v. Brooks,*
436 U.S. 149 (1978)...............................................41

*Foman v. Davis,*
371 U.S. 178 (1962)...............................................2, 52

*Fowler v. Benson,*
924 F.3d 247 (6th Cir. 2019) ...............................................37

*Fuentes v. Shevin,*
407 U.S. 67 (1972)...............................................*passim*

*Gonzalez v. Hidalgo Cnty.,*
489 F.2d 1043 (5th Cir. 1973) ...............................................44

*Hamilton v. Palm,*
621 F.3d 816 (8th Cir. 2010) ...............................................21, 24, 40

*Helton v. Hunt,*
330 F.3d 242 (4th Cir. 2003) ...............................................39, 48

*Henneford v. Silas Mason Co.,*
300 U.S. 577 (1937)...............................................41

*Hillesheim v. Myron's Cards & Gifts, Inc.,*
897 F.3d 953 (8th Cir. 2018) ...............................................15

*Hodel v. Irving,*
481 U.S. 704 (1987)...............................................41

*Hughes v. City of Cedar Rapids,*
840 F.3d 987 (8th Cir. 2016) ...............................................*passim*

*Johnson v. Griffin*,
   69 F.4th 506 (8th Cir. 2023) ..................................................................14, 15, 16

*Kelley v. Mayhew*,
   973 F. Supp. 2d 31 (D. Me. 2013) ........................................................................48

*Kroupa v. Nielsen*,
   731 F.3d 813 (8th Cir. 2013) ..................................................38, 39, 45, 48

*L.H. v. Independence Sch. Dist.*,
   111 F.4th 886 (8th Cir. 2024) ................................................................................15

*Lexmark Int'l, Inc. v Static Control Components, Inc.*,
   572 U.S. 118 (2014)................................................................................................30

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).........................................................................................*passim*

*Massachusetts v. EPA*,
   549 U.S. 497 (2007)........................................................................................33, 35

*Mathews v. Eldridge*,
   424 U.S. 319 (1976)................................................................................................38

*Meese v. Keene*,
   481 U.S. 465 (1987)................................................................................................33

*Memphis Light, Gas & Water Div. v. Craft*,
   436 U.S. 1 (1978)...................................................................................................46

*Mickelson v. Cnty. of Ramsey*,
   823 F.3d 918 (8th Cir. 2016) ........................................................41, 45, 47

*Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc.*,
   406 F.3d 1052 (8th Cir. 2005) ................................................................49, 52

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)................................................................................................46

*Noatex Corp. v. King Constr. of Houston, LLC*,
   732 F.3d 479 (5th Cir. 2013) ................................................................................48

*Norfolk & Dedham Mut. Fire Ins. Co. v. Rogers Mfg. Corp.*,
122 F.4th 312 (8th Cir. 2024) .................................................................15, 40

*Parrish v. Mallinger*,
133 F.3d 612 (8th Cir. 1998) ...........................................................................41

*Quartana v. Utterback*,
789 F.2d 1297 (8th Cir. 1986) .........................................................................49

*Rau v. Cavenaugh*,
500 F. Supp. 204 (D.S.D. 1980) .....................................................................44

*Rice v. Vill. of Johnstown*,
30 F.4th 584 (6th Cir. 2022) ...........................................................................16

*Ringhofer v. Mayo Clinic, Ambulance*,
102 F.4th 894 (8th Cir. 2024) .........................................................................20

*U.S. ex rel. Roop v. Hypoguard USA, Inc.*,
559 F.3d 818 (8th Cir. 2009) ..........................................................................50

*Sanders v. Clemco Indus.*,
823 F.2d 214 (8th Cir. 1987) ..........................................................................50

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016).........................................................................................17

*Starr v. Mandanici*,
152 F.3d 741 (8th Cir. 1998) (Beam, J. & Loken, J. concurring) .....................37

*State v. Abrahamson*,
696 N.W.2d 589 (Iowa 2005) .........................................................................27

*State v. Fagan*,
No. 19-1757, 2021 WL 211151 (Iowa Ct. App. Jan. 21, 2021)........................26

*State v. Moment*,
958 N.W.2d 608 (Iowa Ct. App. 2021) ...........................................................26

*Steel Co. v. Citizens for Better Env't*,
523 U.S. 83 (1998).....................................................................................37, 38

*In re SuperValu, Inc.*,
  870 F.3d 763 (8th Cir. 2017) ...............................................................24, 43

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)..............................................................17, 18, 28, 29

*Swarb v. Lennox*,
  405 U.S. 191 (1972).......................................................................38, 45

*Todman v. Mayor of Balt.*,
  631 F. Supp. 3d 314 (D. Md. 2022)...............................................................48

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) (Thomas, J., dissenting) .........................................4, 17, 28

*Uzuegbunam v. Preczewski*,
  592 U.S. 279 (2021).......................................................................33, 34

*Walters v. Wolf*,
  660 F.3d 307 (8th Cir. 2011) ..................................................................41

*Williams v. Cook Cnty.*,
  No. 18-cv-1456, 2018 WL 4361946 (N.D. Ill. Sept. 13, 2018) ........................48

*Wilson v. Ark. Dep't of Hum. Servs.*,
  850 F.3d 368 (8th Cir. 2017) ..................................................................22

*Wisconsin v. Constantineau*,
  400 U.S. 433 (1971).......................................................................45

*Worthy v. City of Phenix City*,
  930 F.3d 1206 (11th Cir. 2019) ..................................................................21

*Yearous v. Niobrara Cnty. Mem'l Hosp. ex rel. Bd. Of Trs.*,
  128 F.3d 1351 (10th Cir. 1997) ..................................................................43

*Zinermon v. Burch*,
  494 U.S. 113 (1990)..............................................................................28

**Statutes**

28 U.S.C. § 1291 .......................................................................................1

28 U.S.C. § 1331 .......................................................................................1

28 U.S.C. § 1343 .................................................................................1

42 U.S.C. § 1983 .............................................................................1, 38

Iowa Code § 356.7 ..........................................................................27, 35

Iowa Code § 356.7(1)......................................................................26, 36

Iowa Code § 356.7(3)............................................................................26

Iowa Code § 627.6 ...............................................................................26

Iowa Code § 676.1 .................................................................10, 27, 29, 36

**Other Authorities**

Bernardo Granwehr, *Investigation of Inmate Medical Co-Pays at
   Iowa's County Jails* at 11, Iowa Office of Ombudsman (Mar. 21,
   2024),
   https://ombudsman.iowa.gov/reports/categories/58c76956c4844f8b
   85357ed75f4937bf .............................................................................35

**Rules**

Fed. R. App. P. 32(a)(5)........................................................................55

Fed. R. App. P. 32(a)(6)........................................................................55

Fed. R. App. P. 32(g) ...........................................................................55

Fed. R. Civ. P. 12(b)(6)...................................................................*passim*

Fed. R. Civ. P. 15(a)(1)(A) ...................................................................11

Fed. R. Civ. P. 15(a)(2) ........................................................................49


Fed. R. Civ. P. 59 ...........................................................................49, 52

Fed. R. Civ. P. 60 ................................................................................49

L.R. 28A(h) .........................................................................................55

U.S. Constitution Fourteenth Amendment ......................................*passim*

**STATEMENT OF JURISDICTION**

The district court had jurisdiction under 28 U.S.C. § 1331 because Plaintiffs allege violations of the Fourteenth Amendment to the U.S. Constitution. (App. 28–29; R. Doc. 9 ¶¶ 148–54.) Because Plaintiffs brought this suit to vindicate the deprivation of "rights, privileges, or immunities secured by the Constitution," *see* 42 U.S.C. § 1983, the district court also had jurisdiction under 28 U.S.C. § 1343.

This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 because Plaintiffs seek review of a final order. On November 1, 2024, the district court granted Defendants' motion to dismiss and entered judgment in Defendants' favor. (App. 236, 254; R. Docs. 34, 35.) Plaintiffs sought post-dismissal leave to amend the pleadings, which the district court denied on February 7, 2025. (App. 408; R. Doc. 40.) Plaintiffs timely appealed on March 7, 2025. (App. 411; R. Doc. 41.)

**STATEMENT OF ISSUES**

1. Whether Plaintiffs have standing to bring a claim under the Fourteenth Amendment to the U.S. Constitution for a violation of procedural due process following the deprivation of their property by Defendants without notice or an opportunity to be heard.

    **Cases:**   *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)

                *Hughes v. City of Cedar Rapids*, 840 F.3d 987 (8th Cir. 2016)

2. Whether the district court erred in making an alternative holding under Rule 12(b)(6) that failed to accept as true Plaintiffs' factual allegations, draw all reasonable inferences in Plaintiffs' favor, and apply the appropriate legal standards.

**Cases:** *Fuentes v. Shevin*, 407 U.S. 67 (1972)

*D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174 (1972)

3. Whether the district court improperly denied Plaintiffs' motion for leave to amend the pleadings solely due to delay.

**Cases:** *Foman v. Davis*, 371 U.S. 178 (1962)

## INTRODUCTION

To sidestep the Due Process Clause of the Fourteenth Amendment, Defendants developed a novel scheme to seize money from individuals at the Black Hawk County Jail and demand payment after their release. Defendants coerced Plaintiffs to sign a document, while in custody, requiring payment of jail fees. After release from jail, Defendants use that document to collect and initiate uncontestable collection actions. According to Defendants, they can impose and collect the fees without due process because Plaintiffs unknowingly signed away their rights and relinquished their property. While Article III imposes "the irreducible constitutional minimum [to establish] standing," at this stage in the proceedings Plaintiffs' burden is a light one. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). By

challenging Defendants' collection of their money and their loss of constitutional rights, Plaintiffs have carried that burden.

Defendants rely on confessions of judgment to avoid any review of their demands for jail fees. The Supreme Court has described such documents as constituting "the loosest way of binding a man's property that ever was devised in any civilized country." *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 177 (1972). Using confessions of judgment as a cudgel to require payment of jail fees, Defendants employ a host of tactics to collect: seizures of money upon booking at the jail; telephone calls after release; collection letters; personal visits from uniformed Sheriff's deputies; and, if none of those satisfy Defendants' demands for payment, a special court action without notice or hearing.

As a result, Plaintiffs lost their money, were deprived of any process whatsoever, and face future imminent harm. Defendants seized $75 from Mr. Sayers, required payment of an additional $4,340 from him, and demanded $730 from Ms. Roberts. If given a chance to contest the fees, Plaintiffs could assert a number of defenses that may reduce or completely eliminate their financial obligations. As then-Sheriff Tony Thompson acknowledged, when jail fees are subject to judicial review, judges are "generally . . . willing to waive" them. (App. 17; R. Doc. 9 ¶ 78.) But denying that review—or any review at all—allows Defendants to squeeze "blood out of a turnip" (*id.* ¶ 77), to fund unbudgeted expenses for the Sheriff's

Office (App. 19–21; R. Doc. 9 ¶¶ 88–99). Defendants thereby assert unchecked power to extract property by any means necessary in the absence of constitutionally mandated guardrails.

The district court acknowledged "this was a case with complicated and close issues." (App. 409; R. Doc. 40, at 2.) But the court dismissed the FAC, holding that Plaintiffs had not adequately alleged Defendants caused their injuries and that the federal courts could not provide redress. (App. 245–47; R. Doc. 34, at 10–12.) The district court's causation analysis was rife with errors, as the court failed to accept Plaintiffs' allegations as true, declined to draw all reasonable inferences in Plaintiffs' favor, disregarded an entire section of the FAC, improperly considered the ultimate merits of Plaintiffs' claims, and narrowly interpreted the scope of the FAC. The district court's redressability analysis fared no better, as the court inexplicably failed to consider the availability of nominal damages, prematurely determined compensatory damages were unavailable, and ignored the real-world impacts of declaratory and injunctive relief.

While the outer bounds of Article III standing can raise difficult questions, *e.g.*, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 441 (2021) (Thomas, J., dissenting), this is not such a case. Plaintiffs allege among the "most obvious" of harms, the loss of their money, *id.* at 425; the absence of process, *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 994 (8th Cir. 2016); and the risk of future harm. Any of those harms

4

suffice to satisfy the injury-in-fact requirement. The causation and redressability prongs are no less obvious, as Plaintiffs have been "an object of [government] action (or forgone action)." *Lujan*, 504 U.S. at 561–62. In such circumstances, "there is ordinarily little question that the action or inaction has caused [a plaintiff] injury, and that a judgment preventing or requiring the action will redress it." *Id.* In other words, Plaintiffs easily satisfy the "relatively modest" burden to plead standing. *Bennett v. Spear*, 520 U.S. 154, 171 (1997).

Having determined that it lacked jurisdiction to hear Plaintiffs' procedural due process claim (Count 1), the district court nevertheless proceeded to opine on the merits. In doing so, the district court exceeded its jurisdiction and improperly found—contrary to Plaintiffs' allegations—that Defendants did not deprive Plaintiffs of their property because Plaintiffs "voluntarily paid defendants." (App. 249; R. Doc. 34, at 14.) That factual finding—unsupported in the pleadings—must be vacated.

In sum, the Court should reverse the district court's standing ruling, vacate the district court's findings of fact, and remand. If, however, the Court affirms the standing analysis, it must vacate the district court's merits decision, and it should reverse the district court's denial of Plaintiffs' post-dismissal motion for leave to amend.

## STATEMENT OF THE CASE

### I. Defendants Assessed Jail Fees and Demanded Payment from Plaintiffs.

Plaintiffs Leticia Roberts and Calvin Sayers brought this action on behalf of themselves and similarly situated individuals, alleging that "Defendants' policies, practices, and customs are unconstitutional, and their use of confessions of judgment to impose and collect jail fees is unlawful." (App. 2; R. Doc. 9 ¶ 3.) Defendants seized $75 from Mr. Sayers while he was incarcerated and compelled $50 from him after his release; similarly, Defendants demanded payment from Ms. Roberts and, since a Sheriff's deputy visited her home, Ms. Roberts has paid to minimize her interactions with law enforcement. (App. 4; R. Doc. 9 ¶ 11.) Neither Mr. Sayers nor Ms. Roberts were provided notice or an opportunity to be heard. (App. 21; R. Doc. 9 ¶ 100.)

Mr. Sayers is seventy years old, retired, and provides care for his adult son with disabilities. (App. 24; R. Doc. 9 ¶ 126.) He served fifty-seven days in jail for operating a motor vehicle while intoxicated, a sentence he served in increments so he could care for his son. (App. 24, 25; R. Doc. 9 ¶¶ 128, 130.) When Mr. Sayers was booked at jail, Defendants seized a total of $75 to apply toward his jail fees. (App. 25; R. Doc. 9 ¶ 133.) Before he was released, Defendants presented Mr. Sayers with a confession of judgment stating Defendants would charge him $4,415: $425 for booking fees and $3,990 for room and board for the fifty-seven days Mr. Sayers

served. (*Id.* ¶ 134.) Discounting the $75 in seized money, the confession of judgment stated that his adjusted balance due was $4,340. (*Id.*) At the time of filing the FAC, Mr. Sayers had paid an additional $50. (*Id.* ¶ 138.)

Ms. Roberts is a single mother of three young children, ages 4, 9, and 12. (App. 21; R. Doc. 9 ¶ 101.) She served a total of nine days at the jail for two offenses for operating a motor vehicle while under the influence. (*Id.* ¶ 103.) She was released for the first offense on May 14, 2022. (App. 22; R. Doc. 9 ¶ 105.) Before her release, Defendants directed her to sign a confession of judgment. (*Id.* ¶ 106.) After her release, Defendants' representative called her to collect, and Ms. Roberts responded that she was unable to afford the jail fees because she needed to support her three children. (App. 23; R. Doc. 9 ¶¶ 113, 114.) Defendants then mailed her a collection letter, demanding that she make payments. (*Id.* ¶¶ 115, 117.) When Ms. Roberts finished serving her second sentence on September 3, 2022, she signed another confession of judgment form. (*Id.* ¶ 118.) Together, the two confessions of judgment invoiced Ms. Roberts for a total of $730. (App. 24; R. Doc. 9 ¶ 124.) After she was released, a uniformed Sheriff's deputy visited Ms. Roberts's home and demanded payment, promising Defendants would not bother her if she paid her jail fees. (*Id.*

¶ 121.) Thereafter, she made monthly payments of $5. (*Id.* ¶ 122.)[1] At the time the FAC was filed, she had paid roughly $85 in jail fees. (*See id.*)

Both Mr. Sayers and Ms. Roberts live on fixed incomes. (App. 21, 24; R. Doc. 9 ¶¶ 102, 127.) They signed confessions of judgment before being released from jail because they were told they had to in order to receive their property and be released, or because they believed they had no other choice. (App. 22, 23, 25; R. Doc. 9 ¶¶ 106, 118, 135.)[2] The confession of judgment documents require payment of $25 per month. (App. 9; R. Doc. 9 ¶ 34.) The form provides that, if a person does "not timely make payments . . . this document will be filed as a Confession of Judgment of the above balance due." (App. 10; R. Doc. 9 ¶ 38.) Before the district court, Defendants noted that Plaintiffs "both fail[ed] to pay under the agreed upon terms" (R. Doc. 12-1, at 10), and that Defendants "still could make that decision" to file the confessions of judgment in court (App. 286; R. Doc. 36, at 32.)

---

[1] As Plaintiffs noted below, Paragraph 122 of the FAC contains a typographical error. The paragraph alleges that Ms. Roberts "made a minimal amount of payment towards her jail fees in the amount of $5 each month" from the period of October 2023 to February 2024. (App. 24; R. Doc. 9 ¶ 122.) The correct month and year of the first payment was October 2022. (*See, e.g.*, App. 4; R. Doc. 9 ¶ 11.)

[2] A review of public records shows that, except for one individual, every person who was presented a confession of judgment document signed before they were released to the community. (App. 139; R. Doc. 11-18 ¶ 22.) Six other individuals did not sign the confessions of judgment, but those individuals were transferred to another facility. (App. 140; R. Doc. 11-18 ¶¶ 20–21.) Defendants did not contest this evidence below.

Plaintiffs had no opportunity to assert any number of defenses, including that they could not pay, their income was protected from garnishment, the fines were impermissibly excessive, and that the confessions of judgment were unlawful. (App. 5; R. Doc. 9 ¶ 16.)

## II. Defendants Use a Variety of Tactics to Collect Jail Fees.

Defendants' policies, practices, and customs for imposing and collecting jail fees involve several elements.

*First*, prior to release from jail, Defendants direct individuals to sign a document titled "Room and Board Confession of Judgment" with pre-filled terms and conditions. (App. 8; R. Doc. 9 ¶ 30; *see also* App. 39; R. Doc. 9-2.) Defendants use the signed documents to compel payments before going to court and, even when they do file confessions of judgment in court, their requests for jail fees are approved by the clerk without judicial review. (App. 7–11; R. Doc. 9 ¶¶ 25–50.) The confession of judgment document requires payment of $25 per month, beginning the month following release. (App. 9; R. Doc. 9 ¶ 34.) The document may also indicate that any money Defendants seized from a person at booking will be kept as an "Amount Paid" towards the jail fees purportedly owed. (*Id.* ¶ 35.) Individuals are told to sign this standardized form, without any opportunity to negotiate or consult with an attorney, while they and their personal possessions are still in Defendants' custody, and without consideration. (App. 13; R. Doc. 9 ¶¶ 58–62.)

***Second***, after release, Defendants contact individuals to collect. (App. 11; R. Doc. 9 ¶ 43.) Defendants' policies, practices, and customs involve the use of: (a) phone calls; (b) collection letters; and (c) visits from uniformed Sheriff's deputies. (App. 23–24; R. Doc. 9 ¶¶ 113, 115, 121.)

***Third***, if Defendants still don't receive the money they demand, Defendants may choose to file the confession of judgment pursuant to Iowa Code section 676.1, which allows them to obtain judgment "without action." (App. 11–12; R. Doc. 9 ¶¶ 46, 53.) Once filed, the clerk of court automatically approves the claim without the alleged debtor being allowed to contest the fees or assert defenses, and without judicial review. (App. 11; R. Doc. 9 ¶¶ 47, 50.)

The Sheriff's Office designed these procedures to circumvent judicial review, impose jail fees without oversight, and to exert control over the funds collected. (App. 7–11, 19–21; R. Doc. 9 ¶¶ 25–50, 88–99.) The Sheriff's Office controls the funds collected from jail fees. (App. 14; R. Doc. ¶ 67.) No other entity reviews any claims for jail fees; the Sheriff's Office is the sole entity that decides what per diem rate Defendants charge, whether someone actually is eligible to be charged under Iowa law, and the amounts each individual owes. (*See id.*) Under this scheme, no court ever assesses whether the fees charged are excessive, lawful, or proper. (App. 5, 14; R. Doc. 9 ¶¶ 16, 67.)

In October 2022, Defendants' policies, practices, and customs came under scrutiny by the Black Hawk County Board of Supervisors (the "Board"). (App. 14–19; R. Doc. 9 ¶¶ 68–87.) At that time, the Board questioned expenses paid for with jail fees collected by Defendants, including a cotton candy machine, an ice cream machine, and laser tag. (App. 15; R. Doc. 9 ¶ 71.) Once the Board passed a resolution putting the jail fees collected under the Board's control, to be spent only as approved by the Board (*id.* ¶ 74), Sheriff Thompson emailed members of the Board to inform them the Sheriff's Office would no longer collect jail fees, instead focusing on "activities which directly benefit and affect" the Sheriff's Office (App. 14–15; R. Doc. 9 ¶ 75). In his email, Sheriff Thompson stated that, "if judges were to review the jail fees, they 'are generally the fees that judges as willing to waive.'" (App. 17; R. Doc. 9 ¶ 78.) The Board reversed course and Defendants then continued their policies, practices, and customs unchanged. (App. 19; R. Doc. 9 ¶¶ 86–87.)

## III. Procedural History.

Plaintiff Leticia Roberts filed her Complaint on May 13, 2024, asserting claims under the Fourteenth Amendment to the U.S. Constitution, including a denial of procedural due process as Count 1. (R. Doc. 1.) Plaintiffs amended the Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(A), adding Mr. Sayers as a Plaintiff. (App. 1; R. Doc. 9.)

Defendants moved to dismiss the FAC (App. 224; R. Doc. 12), on the basis that "Plaintiffs have not alleged a concrete and particularized injury-in-fact" (R. Doc. 12-1, at 9), and that Plaintiffs failed to state a claim as to Count 1 because they alleged "no constitutionally cognizable property interest" (*id.* at 13). Plaintiffs opposed the motion to dismiss. (R. Doc. 22.) With regard to standing, Plaintiffs argued they had sufficiently pleaded an injury, including monetary harm (*id.* at 7), the absence of due process (*id.* at 8–9), and the threat of further imminent injury in future confessed judgment proceedings (*id.* at 8). Plaintiffs also argued they stated a claim for a violation of procedural due process because the complete absence of process following a deprivation of property is unconstitutional. (*Id.* at 10.)

The Court heard argument on Defendants' motion to dismiss and Plaintiffs' motion for preliminary injunction. (R. Doc. 28.) During that hearing, Defendants described the "general process" as involving: the signing of a confession of judgment document, phone calls, collection letters, personal service by uniformed Sheriff's deputies, and initiating a reimbursement claim via the filing of a confession of judgment. (App. 284–86; R. Doc. 36, at 30–32.) The district court "hypothesized" that facts may exist to indicate Defendants used "the confession of judgment perhaps unconstitutionally to coerce a payment of something that has not actually had a chance to be challenged." (App. 265; R. Doc. 36, at 11.)

On November 1, 2024, the court granted Defendants' motion to dismiss, denied Plaintiffs' motion for preliminary injunction as moot, and entered final judgment in favor of Defendants. (App. 236, 254; R. Docs. 34, 35.) In sum, the district court concluded that Plaintiffs had failed to adequately plead the causation and redressability elements of standing, and Defendants did not deprive Plaintiffs of their property. (App. 247, 250; R. Doc. 34, at 12, 15.) None of these arguments were raised in Defendants' motion to dismiss. (R. Doc. 12-1.)

Twenty-eight days later, Plaintiffs filed a post-dismissal motion to amend the pleadings (the "Motion to Amend") (App. 320; R. Doc. 37), along with a proposed Second Amended Complaint ("SAC") (App. 327; R. Doc. 37-1). Plaintiffs explained that the SAC cured the FAC's deficiencies, to the extent there were any, and that the Motion to Amend was not unduly delayed, the result of bad faith, or overly prejudicial to Defendants. (R. Doc. 37-3.) Defendants opposed the motion. (R. Doc. 38.)

The district court denied the Motion to Amend as untimely. (App. 408–09; R. Doc. 40, at 1–2.) The district court acknowledged that "[t]he substance of defendants' motion to dismiss was the absence of injury in fact," but nonetheless held "plaintiffs were on notice from defendants' motion to dismiss about the fundamental problem with their claims" noting that "this was a case with

complicated and close issues . . . , especially regarding the due process claim." (App. 409; R. Doc. 40, at 2.)

Plaintiffs timely appealed the dismissal of Count 1 and the denial of the Motion to Amend. (App. 411; R. Doc. 41.) Plaintiffs do not appeal the dismissal of Counts 2 and 3 nor the denial of the motion for preliminary injunction. (*Id.*)

## SUMMARY OF THE ARGUMENT

I. Plaintiffs' easily meet the requirements to plead standing by alleging they lost their money and constitutional rights due to Defendants' conduct, and the federal courts can redress those injuries.

II. Should the Court reach the merits of Count 1, it should vacate the district court's improper factual findings and hold that Plaintiffs have stated a claim for a violation of procedural due process.

III. If the Court affirms the district court's standing analysis, it should reverse the denial of Plaintiffs' motion for leave to amend the pleadings.

## ARGUMENT

### I.  Standard of Review.

This Court reviews de novo Plaintiffs' standing. *Johnson v. Griffin*, 69 F.4th 506 (8th Cir. 2023). Plaintiffs have the burden to establish standing, but "the extent of that burden varies depending on the stage of litigation. At the dismissal stage, the plaintiffs must allege sufficient facts to support a reasonable inference that they can

satisfy the elements of standing." *L.H. v. Independence Sch. Dist.*, 111 F.4th 886, 892 (8th Cir. 2024). That "pleading burden is 'relatively modest.'" *Johnson*, 69 F.4th at 510 (quoting *Bennett*, 520 U.S. at 171).

This Court also reviews de novo a district court's grant of a motion to dismiss for failure to state a claim. *Hughes v. City of Cedar Rapids*, 840 F.3d 987, 994 (8th Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "When a complaint allows for multiple plausible readings, it should not be dismissed as long as at least one plausible reading 'allows the court to draw the reasonable inference that the defendant is liable.'" *Norfolk & Dedham Mut. Fire Ins. Co. v. Rogers Mfg. Corp.*, 122 F.4th 312, 316 (8th Cir. 2024).

This Court reviews the denial of post-dismissal motions for leave to amend the pleadings "for an abuse of discretion and issues regarding an amendment's futility de novo." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018).

**II.    Plaintiffs Have Standing to Bring a Procedural Due Process Claim.**

The district court improperly concluded that Plaintiffs lacked standing to bring the procedural due process claim in Count 1 because the second and third elements—causation and redressability—were absent. Instead of applying the "relaxed" requirements applicable to procedural injuries at the motion to dismiss stage, *Rice v. Vill. of Johnstown*, 30 F.4th 584, 592 (6th Cir. 2022), the district court based its analysis on inappropriate factual findings contrary to Plaintiffs' allegations and a misreading of the FAC. This decision must be reversed.

Standing generally entails three elements: that plaintiffs "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Johnson*, 69 F.4th at 510. Because "procedural rights are special," *Lujan*, 504 U.S. at 572 n.7, "the 'causation and redressability requirements are relaxed' for procedural injuries," *Rice*, 30 F.4th at 592. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan*, 504 U.S. at 561. In addressing standing, the Court "assume[s] that on the merits the plaintiffs would be successful in their claims." *Am. Farm Bureau Fed'n v. U.S. Env't Prot. Agency*, 836 F.3d 963, 968 (8th Cir. 2016).

While the district court properly concluded that Plaintiffs suffered an injury-in-fact, its inquiry was incomplete, and the causation and redressability portions of the district court's standing analysis were erroneous. Here, Defendants caused Plaintiffs' injuries—including not only the financial harm but also the loss of Plaintiffs' constitutional rights and the threat of imminent further harm—and the federal courts can redress those injuries through monetary and/or declaratory and injunctive relief.

## A. The District Court Properly Concluded Plaintiffs' Loss of Money Constituted an Injury-in-Fact but Did Not Assess Other Injuries.

"Certain harms readily qualify as concrete injuries under Article III. The most obvious are traditional tangible harms, such as physical harms and monetary harms." *TransUnion*, 594 U.S. at 425. "Various intangible harms can also be concrete," such as those "harms specified by the Constitution." *Id.* (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016)). As a result, "allegations that the procedure is inadequate . . . sufficiently establishes an injury in fact for Article III standing." *Hughes*, 840 F.3d at 994. Plaintiffs can also establish injury-in-fact by asserting that a "threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

The district court correctly held that Plaintiffs adequately alleged they suffered among the "most obvious" of injuries, "monetary harms." *TransUnion*, 594 U.S. at 425. As the district court acknowledged, "[b]y simply paying part of the jail

fees—a monetary loss for which plaintiffs claim defendants must answer in damages—plaintiffs have suffered an injury-in-fact." (App. 244; R. Doc. 34, at 9.) Ms. Roberts made monthly payments, following Defendants' demands; Defendants seized Mr. Sayers's money; and he also made further payments, pursuant to Defendants' demands. (App. 4; R. Doc. 9 ¶ 11.) Plaintiffs' "economic harm 'is a concrete, non-speculative injury.'" *Enter. Fin. Grp. v. Podhorn*, 930 F.3d 946, 950 (8th Cir. 2019).

The district court did not, however, analyze Plaintiffs' other alleged harms: the violation of due process rights and the imminent risk that Plaintiffs face entry of a confessed judgment. (R. Doc. 22, at 7–8.) Defendants denied Plaintiffs notice and an opportunity to be heard. (App. 21, 28; R. Doc. 9 ¶¶ 100, 152.) Plaintiffs face the distinct risk of a future confessed judgment without judicial review. (App. 11; R. Doc. 9 ¶¶ 44–50.) Each independently qualifies as an injury-in-fact. *Susan B. Anthony*, 573 U.S. at 158; *Hughes*, 840 F.3d at 994.

Accordingly, Plaintiffs satisfy the injury-in-fact requirement by asserting the loss of their money, the violation of their constitutional rights, and the imminent risk of further harm.

**B. The District Court Erred in Holding that Plaintiffs Failed to Plead Causation.**

Plaintiffs' detailed allegations exceed the causation pleading requirements. By seizing Plaintiffs' money and requiring further payment of jail fees, Defendants caused Plaintiffs' injuries.

The district court's causation analysis suffered from several crucial errors. First, the court improperly narrowed Plaintiffs' allegations to ask only whether "the fees they paid to defendants" were "fairly traceable to defendants' use of confessions of judgment." (App. 245; R. Doc. 34, at 10.) Not only does this disregard Plaintiffs' allegations that Defendants use the confessions of judgment to collect, it also unfairly parses Plaintiffs' allegations piece by piece, failing to consider the FAC as a whole. Plaintiffs challenge Defendants' policies, practices, and customs regarding jail fees, of which confessions of judgment are a part. Even if the FAC challenged solely Defendants' use of confessions of judgment (it did not), Plaintiffs adequately pleaded that confessions of judgment themselves also caused injury. Second, the district court erroneously imported a consideration of the merits into the standing analysis. Not only did the court err in holding additional process would not benefit Plaintiffs, that consideration was improper for purposes of standing. Third, the district court did not consider Plaintiffs' allegations that Defendants caused the absence of process and created a risk of future harm.

Simply put, Defendants' policies, practices, and customs caused Plaintiffs' injuries and Defendants' use of confessions of judgment are one part of those practices. Defendants' conduct caused Plaintiffs' loss of money and denial of due process while also raising the risk of future injury. Accordingly, Plaintiffs alleged causation sufficient to confer standing.

1. *The district court's failure to accept Plaintiffs' allegations as true and draw all reasonable inferences in Plaintiffs' favor infected its causation analysis.*

The district court committed error by narrowly construing Plaintiffs' allegations as a challenge only to Defendants' use of confessions of judgment. That misreading of the FAC led the district court to erroneously conclude that the confessions of judgment did not cause the injuries Plaintiffs alleged. In reality, the confessions of judgment are one element of Defendants' policies, practices, and customs that caused Plaintiffs' injuries. Even if the FAC was limited to the harms caused by Defendants' use of the confessions of judgment alone, the district court erred when it disregarded Plaintiffs' well-pleaded allegations that Defendants used the confessions of judgment to coerce the payment of jail fees.

"At the motion to dismiss stage, the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894, 901 (8th Cir. 2024). When a district court "d[oes] not consider the complaint as a whole, instead focusing on specific parts of the [pleadings]," it commits reversible error. *Id.*; *see also Davis*

20

*v. Wash. Univ. in St. Louis*, 960 F.3d 478, 483 (8th Cir. 2020) (reversing dismissal where there was more than "one plausible inference" from the complaint); *Worthy v. City of Phenix City*, 930 F.3d 1206, 1214 (11th Cir. 2019) (reversing dismissal when the district court interpreted a complaint as challenging only certain penalties). The Court must draw all reasonable inferences in Plaintiffs' favor; "[w]hich inference will prove to be correct is not an issue to be determined by a motion to dismiss." *Hamilton v. Palm*, 621 F.3d 816, 819 (8th Cir. 2010).

Defendants' scheme relies on various tactics to extract money from individuals like Plaintiffs who previously served time in jail, without any review. Procuring a coerced signature on a confession of judgment document is a part of Defendants' scheme, as Defendants use those documents to collect jail fees even before filing a civil reimbursement claim in state court. (App. 8–11; R. Doc. 9 ¶¶ 28–50.) But the district court did not consider the other aspects of Defendants' collection scheme, including: cash seizures (App. 9; R. Doc. 9 ¶ 35), telephone calls and collection letters (App. 11, 24; R. Doc. 9 ¶¶ 43, 115), home visits from uniformed Sheriff's deputies visit (App. 24; R. Doc 9 ¶ 121), and uncontestable claims for jail fees filed in court (App. 11; R. Doc. 9 ¶ 44). Each component of this scheme is a part of what Sheriff Thompson described as Defendants' efforts to "tenaciously pursue" jail fees to squeeze "blood out of a turnip." (App. 16; R. Doc. 9 ¶ 77.)

Defendants used these tactics to collect from Plaintiffs: Defendants seized money from Mr. Sayers while he was in the jail and compelled additional payment after release (App. 4, 25; R. Doc. 9 ¶¶ 11, 133, 138); Defendants called Ms. Roberts, mailed her a collection letter, and sent a uniformed Sheriff's deputy to visit her home before she made any payments (App. 4, 23, 24; R. Doc. 9 ¶¶ 11, 113, 115, 121). Reading the FAC as a whole, as required, Plaintiffs challenged the entirety of Defendants' scheme (*e.g.*, App. 2; R. Doc. 9 ¶ 2), through which Defendants provide no process to contest jail fees (App. 28; R. Doc. 9 ¶ 152).

By misreading the FAC as limited to the propriety of confessions of judgment, the district court "invert[ed] the principle that the complaint is construed most favorably to the nonmoving party." *Wilson v. Ark. Dep't of Hum. Servs.*, 850 F.3d 368, 374 (8th Cir. 2017). While the district court acknowledged the FAC alleged "that defendants deprived plaintiffs of their property—*i.e.*, money in the form of jail fees—without due process of law through the confessions of judgment, and that defendants provide no process by which plaintiffs can challenge the fees" (App. 241; R. Doc. 34, at 6), when it came time to conduct the causation analysis, the district court set those allegations to the side. Specifically, the district court stated:

> The conduct plaintiffs challenge is defendants' use of confession of judgment documents. For plaintiffs to have standing, then, the fees they paid to defendants must be fairly traceable to defendants' use of confessions of judgment.

(App. 25; R. Doc. 34, at 10.) Rather than assessing whether Defendants caused the alleged injuries, the district court narrowed the inquiry to ask merely whether the document Defendants used was the source of Plaintiffs' injuries. The district court's decision to limit Plaintiffs' allegations in this way was erroneous.

However, even under the district court's narrow reading, Plaintiffs' claims should have survived. Plaintiffs pleaded that Defendants used the confession of judgment documents as a means of collecting jail fees. (App. 5; R. Doc. 9 ¶ 13.) When the district court held that "defendants' use of confessions of judgment . . . was not the source of plaintiffs' injuries" (App. 245; R. Doc. 34, at 10), it ignored twenty-six paragraphs of the FAC detailing how "Defendants use confessions of judgment procured prior to release to compel payments and avoid judicial review" (App. 7–11; R. Doc. 9 ¶¶ 25–50). Among other things, that section of the FAC referred to Defendants' official policy, which provided: "[A]t the time of his/her release . . . the inmate will be asked to sign a completed Confession of Judgment agreeing to make scheduled payments to the Sheriff for the amount owed." (App. 8; R. Doc. 9 ¶ 29.) By its very terms, the standardized confession of judgment document required "scheduled payments," which Plaintiffs alleged Defendants compelled without judicial review. (App. 5; R. Doc. 9 ¶ 3.) At a minimum, the district court was required to draw the reasonable inference that Defendants' use of confessions of judgment caused Plaintiffs' lost money because, by their terms, those

documents required Plaintiffs to pay and because Defendants used those documents to compel payment.

Even if Plaintiffs had alleged simply that "Defendants use confessions of judgment procured prior to release to compel payments" without further details (App. 7–11; R. Doc. 9 ¶¶ 25–50), the district court was required to "'presum[e] that [these] general allegations embrace those specific facts that are necessary to support' a link between" Plaintiffs' injuries and Defendants' conduct. *In re SuperValu, Inc.*, 870 F.3d 763, 772 (8th Cir. 2017). Plaintiffs are not required to plead the particulars of Defendants' collection efforts, including what is said on phone calls and whether Defendants refer to confessions of judgment to demand payment. *See Hamilton*, 621 F.3d at 819 ("A plaintiff need only allege facts that permit the reasonable inference that the defendant is liable."). The normal course of civil procedure required the district court to accept the allegations at this stage of the proceedings and permit development of facts through discovery. *Cf. SuperValu*, 870 F.3d at 773 ("At a later stage of the litigation, defendants are free to litigate whether the data breach caused Holmes' fraudulent charge, but 'this debate has no bearing on standing to sue.'").

Ultimately, under either construction of the FAC, the district court erred.

2. *The district court improperly considered the merits of Count 1 as a part of its causation analysis.*

"[T]he right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimants' substantive assertions, and because of the

24

importance to organized society that procedural due process be observed." *Carey v. Piphus*, 435 U.S. 247, 266 (1978). As a result, whether Plaintiffs have standing to bring Count 1 must not be confused with whether they will ultimately prevail. *Hughes*, 840 F.3d at 994. "Otherwise, in order to have standing, a plaintiff would always have to show the inadequacy of the due process—the central claim." *Id.*

The district court improperly skipped ahead to the merits by speculating whether Ms. Roberts or Mr. Sayers would have fared better had Defendants provided process. As part of its causation analysis, the district court determined that "plaintiffs would owe the fees no matter if defendants used the confessions of judgment or not." (App. 245; R. Doc. 34, at 10.) But the question was not, as the district court put it, whether Ms. Roberts or Mr. Sayers "would have paid less" but for the confession of judgment (a factual dispute) (*id.*), for "[d]etermining the adequacy of the process is generally a merits question" that does not resolve the standing inquiry, *Hughes*, 840 F.3d at 993. Rather, the question the district court should have considered was whether Defendants' actions caused Plaintiffs' injuries of inadequate process and lost property, and continue to threaten them with an immediate, unreviewable judgment. They did (and do). Plaintiffs, therefore, adequately pleaded causation.

The district court's consideration of the adequacy of the process was not just premature, it was erroneous. If Defendants provided the required notice and hearing, Plaintiffs and others charged jail fees could assert numerous defenses to the

imposition of jail fees. Providing the process due to Plaintiffs would meaningfully impact Plaintiffs' rights and obligations. As Sheriff Thompson acknowledged, when jail fees are subject to judicial review, judges are "generally . . . willing to waive" them. (App. 17; R. Doc. 9 ¶ 78.) Of course, by denying notice and an opportunity to be heard—whether before a judge or via pre-litigation procedures—Defendants deprived Plaintiffs of an opportunity to present available defenses.

Those defenses include, but are not limited to, whether: (1) Plaintiffs could afford the amounts charged; (2) the amount charged was accurate and/or reflective of "the actual administrative costs relating to the arrest and booking . . . [or] for room and board," Iowa Code § 356.7(1); (3) the confessions of judgment were entered knowingly, voluntarily, and intelligently, *Overmyer*, 405 U.S. at 187; (4) the jail fees were unconstitutionally excessive, *see State v. Fagan*, No. 19-1757, 2021 WL 211151, at *2 n.6 (Iowa Ct. App. Jan. 21, 2021); or (5) other debts had priority over the jail fees, including "competing claims for child support obligations," Iowa Code § 356.7(3). (App. 5; R. Doc. 9 ¶ 16.) Specifically, Plaintiffs could also have raised that their incomes were absolutely protected from garnishment, Iowa Code § 627.6, such that the demands for payment without process were unlawful, *see State v. Moment*, 958 N.W.2d 608 (Iowa Ct. App. 2021). Any one of those defenses could reduce the amount of fees purportedly owed or invalidate the debt altogether.

Because Defendants have discretion to charge jail fees, Iowa Code § 356.7, they could choose to reduce or waive the fees altogether. A court reviewing a claim for jail fees could exercise its discretion to consider any number of issues. *State v. Abrahamson*, 696 N.W.2d 589, 592 (Iowa 2005). As a result, either pre-litigation process or judicial review would benefit Plaintiffs.

For purposes of causation, it was enough for Plaintiffs to allege that Defendants caused the loss of their property and their constitutional rights. The fact that Plaintiffs also had numerous defenses to the imposition of jail fees only further highlights the district court's errors. Accordingly, this Court should reverse.

3. *The district court failed to consider that Defendants caused the other non-monetary injuries alleged: the loss of rights and the risk of imminent harm.*

In focusing solely on whether confessions of judgment did or did not cause monetary harm, the district court failed to analyze Plaintiffs' other alleged harms. While it is true that Plaintiffs lost their money, Defendants' denial of process also caused Plaintiffs to suffer the loss of constitutional rights and raised the prospect of imminent harm of a future confessed judgment entered "without action." Iowa Code § 676.1. The district court did not assess these two alleged harms, both of which convey standing.

As noted above, the district court properly identified the monetary harm Plaintiffs sustained here. *Infra* Part II.A. However, the district court failed to address that both "allegations that the procedure is inadequate," *Hughes*, 840 F.3d at 994,

and the risk of future harm, *Susan B. Anthony*, 573 U.S. at 158, suffice to plead injury-in-fact. Defendants caused—or will cause—both forms of harm, further establishing causation.

This Court has acknowledged that procedural injuries are themselves actionable. *See Hughes*, 840 F.3d at 994; *Brooks v. City of Des Moines*, 844 F.3d 978, 979 (8th Cir. 2016) (finding standing where drivers were issued a notice of violation). That approach is consistent with the Supreme Court's view that "harms specified by the Constitution itself" are concrete "traditional harms" establishing standing under Article III. *TransUnion*, 594 U.S. at 425. As Plaintiffs repeatedly alleged, they have no opportunity to challenge the purported financial obligation imposed by Defendants. (App. 5, 21, 28; R. Doc. 9 ¶¶ 16, 100, 152.) The constitutional injury resulting from the "fail[ure] to provide due process" has occurred, *Zinermon v. Burch*, 494 U.S. 113, 126 (1990), such that Plaintiffs can seek redress from the courts.

Of course, Defendants deny due process as a matter of policy, but confessions of judgment also cause the loss of due process rights. Properly executed, confessions of judgment serve as "consent[] in advance to . . . obtaining a judgment without notice or hearing." *Overmyer*, 405 U.S. at 176. But where the traditional hallmarks of voluntariness, intelligence, and knowledge are absent, such waivers of rights are constitutionally suspect, as courts cannot "presume acquiescence in the loss of

fundamental rights." *Id.* at 186. While the Room and Board Confession of Judgment document does not actually advise individuals like Plaintiffs of the consequences of signing (App. 10; R. Doc. 9 ¶ 40), Defendants treat it as a means of obtaining judgment "without action." Iowa Code § 676.1. Thus, when signed, the confession of judgment document deprives an individual of their rights to notice and an opportunity to be heard.

What's more, Plaintiffs continue to face imminent further injury. "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony*, 573 U.S. at 158. This is not a situation where the theory of imminent risk of harm "relies on a highly attenuated chain of possibilities." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013). Defendants argued that they may elect to file the confessions of judgment against Plaintiffs (R. Doc. 12-1, at 10 n.2–3); as Defendants' counsel stated to the district court, Defendants "could still make that decision" at any time (App. 286; R. Doc. 36, at 32). At that point, Defendants would obtain automatic judgment "without action." Iowa Code § 676.1. Plaintiffs have no control over this outcome; it is a certainly impending injury that could happen at any time.

By focusing only on the monetary harm, the district court ignored that Defendants caused—or will cause—these additional harms, each of which independently establish causation.

4. *Defendants caused Plaintiffs' injuries.*

Due to its multiple errors, the district court failed to conduct the straightforward causation analysis required here. Defendants seized Mr. Sayers's money, caused both Plaintiffs to pay, deprived Plaintiffs of procedural due process, and continue to threaten Plaintiffs with further injury. Plaintiffs' alleged injuries of the loss of their property, denial of process, and risk of future harm all resulted from Defendants' actions. Therefore, Plaintiffs satisfy the causation requirement by connecting these injuries to Defendants' actions.

Causation requires that a plaintiff allege "a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Lujan*, 504 U.S. at 560 (alterations in original). "Proximate causation is not a requirement of Article III standing." *Lexmark Int'l, Inc. v Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014). Allegations of "inadequate process [are] directly traceable" to a defendant's actions denying process. *Hughes*, 840 F.3d at 994.

Defendants seized Mr. Sayers's money and applied it to the jail fees he allegedly owed when he arrived at the jail. (App. 25; R. Doc. 9 ¶ 133.) This action was consistent with Defendants' official jail fees policy, appended to the FAC, which outlined the process for obtaining confessions of judgment and seizing personally held money from detainees. (App. 37; R. Doc. 9-1, at 2.) Without a confession of judgment document providing that Mr. Sayers's seized $75 would be applied to jail fees, Defendants would have had to return his money and then attempt to collect through lawful means. Instead, Defendants kept Mr. Sayers's money after they seized it, pursuant to their policy and by using the confession of judgment. In other words, even if the confession of judgment did not "cause" the seizure, Defendants did.

Similarly, Defendants' policies, practices, and customs caused Ms. Roberts to pay, and Defendants continue to threaten her with future harm. After release, Ms. Roberts began making payments only after repeated contact with Defendants' agents, which included calls, a collection letter, and an in-uniform visit to her home. (App. 23, 24; R. Doc. 9 ¶¶ 113, 115, 121–22.) Ms. Roberts did not pay until Defendants' agents told her to. (App. 24; R. Doc. 9 ¶¶ 121–22.) If not expressly stated, it is a reasonable and obvious inference that it was Defendants' threat of immediate, court-sanctioned debt obtainable only through the confession of judgment that prompted Ms. Roberts to begin making payments. (*E.g.*, App. 4; R.

Doc. 9 ¶ 11.)[3] But even without that inference, Ms. Roberts's payments were obviously caused by Defendants' demands for payment. In other words, Ms. Roberts would not have paid unless Defendants demanded that she do so.

Defendants assessed the fees; formulated the challenged policies, practices, and customs; seized money from Mr. Sayers; required payment from both Plaintiffs; denied Plaintiffs notice and an opportunity to be heard; and threaten the risk of future harm in the form of an unreviewable confessed judgment. In other words, Defendants caused Plaintiffs' injuries.

### C. Plaintiffs' Requests for Damages, Injunctive Relief, and Declaratory Relief Sufficiently Established Redressability.

Plaintiffs adequately alleged redressability, but the district court erred in this part of its analysis as well. Any one of monetary damages, injunctive relief, or declaratory relief would remedy Plaintiffs' injuries. However, the district court failed to even consider nominal damages, its discussion of compensatory damages was flawed and premature, and its narrow reading of the FAC tainted its analysis of the declaratory and injunctive relief Plaintiffs sought.

---

[3] As Plaintiffs' expert explained, the threat of confessed judgment and lost "day in court" can be overwhelming: once entered, the judgment "can create a cascading series of financial crises that can have devastating consequences for those families." (App. 212; R. Doc. 11-24, at 5.)

Redressability depends on whether "there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007). Any remedy that "partially redress[es] the . . . injury" suffices for Article III purposes. *Meese v. Keene*, 481 U.S. 465, 476 (1987). If relief would "abate[] . . . [ongoing] conduct and prevent[] its recurrence," it provides redress. *See Becker v. N.D. Univ. Sys.*, 112 F.4th 592, 597 (8th Cir. 2024).

Plaintiffs requested damages (App. 32; R. Doc. 9 ¶ 180), a declaration that Defendants' confessions of judgment are unlawful (*id.* ¶ 182), injunctive relief prohibiting the use of confessions of judgment to collect jail fees and initiate reimbursement claims (*id.* ¶¶ 183–84), and any other appropriate relief (*id.* ¶ 185). Any of that relief would provide redress.

First, damages, even nominal, provide redress. "Because nominal damages are in fact damages paid to the plaintiff, they 'affec[t] the behavior of the defendant towards the plaintiff' and thus independently provide redress." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021). "[T]he denial of procedural due process [is] actionable for nominal damages without proof of actual injury." *Carey*, 435 U.S. at 266. Nominal damages constitute "relief on the merits" that Plaintiffs may demand with "no less" force than "payment for millions of dollars in compensatory damages." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). Even a "single dollar" is a

"'partial remedy' [that] satisfies the redressability requirement." *Uzuegbunam*, 592 U.S. at 291. "[I]f the deprivation is determined to have been unjustified," compensatory damages are available. *Brewer v. Chauvin*, 938 F.2d 860, 863 (8th Cir. 1991).

At a minimum, nominal damages would provide redress; if Plaintiffs are ultimately awarded additional compensatory damages, then redress is even more obvious. Plaintiffs' request for damages is therefore sufficient to meet the redressability requirement. (App. 32; R. Doc. 9 ¶ 180.) *Cardiovascular Sys., Inc. v. Cardio Flow, Inc.*, 37 F.4th 1357, 1362 (8th Cir. 2022) ("Averment of general damages is sufficient to state a claim for nominal damages."). Just as the loss of money in any amount is an obvious injury, its recovery provides obvious redress. *Hughes*, 840 F.3d at 994 ("If the court awards damages, their claims are redressed."). Whether Plaintiffs alleged or were likely to prove "any fundamental issue with the fees themselves" (App. 245; R. Doc. 34, at 10), is immaterial; if they prevail in demonstrating the denial of their constitutional right to due process, they are entitled to nominal damages. And for purposes of the redressability requirement, nominal damages are enough to convey standing.

Second, the district court's determination that declaratory or injunctive relief would not provide redress was similarly erroneous. Equitable relief would require Defendants to provide constitutionally adequate process. Plaintiffs' request for an

order impacting Defendants' means of collection jail fees thus suffices to establish redressability. *See Massachusetts*, 549 U.S. at 517–18.

The district court erroneously concluded that, because Defendants had not yet filed confessions of judgment against Plaintiffs in court, declaring them unenforceable would have "no real-world effect." (App. 247; R. Doc. 34, at 12.) That is not the case. Not only are the confessions of judgment and the threat they carry the basic means by which Defendants engage in their collection efforts—the "stick" they wield to compel payment (App. 7–11; R. Doc. 9 ¶¶ 25–50)—the documents are also payment plans themselves, independently creating a purported contractual obligation where none would otherwise exist. (App. 9–10 ¶¶ 37–40; *see also* App. 39; R. Doc. 9-2.)

Iowa law does not require Mr. Sayers to forfeit the money on his person, nor does it require Ms. Roberts to make monthly payments. Iowa Code § 356.7.[4] Only Defendants' jail fees policies and confessions of judgment require this. (App. 39; R. Doc. 9-2.) If, as Plaintiffs request, the confessions of judgment are declared void (App. 32; R. Doc. 9 ¶ 182), then Plaintiffs would not have to make further

---

[4] *See also* Bernardo Granwehr, *Investigation of Inmate Medical Co-Pays at Iowa's County Jails* at 11, Iowa Office of Ombudsman (Mar. 21, 2024), https://ombudsman.iowa.gov/reports/categories/58c76956c4844f8b85357ed75f493 7bf (finding unlawful the practice of deducting funds from inmate commissary accounts to satisfy jail fee debt "without filing the required reimbursement claim").

*contractual* payments, which is obvious redress. In other words, they would be free from the terms of the confession of judgment document they signed while incarcerated at the jail.

The declaratory relief Plaintiffs seek would also provide "real world" redress by limiting Defendants' collection efforts to those authorized by Iowa law. When an individual "fails to pay for [jail fees], the sheriff or municipality may file a reimbursement claim with the district court as provided in subsection 2." Iowa Code § 356.7(1). In other words, if Plaintiffs were to "fail[] to pay," Defendants could not collect any more money unless a judge ruled that the fees were lawful. Thus, if the confession of judgment documents were invalidated, there would be no basis upon which Defendants could insist on payment absent due process.

Plaintiffs' requested injunctive relief would provide similar redress. Plaintiffs sought an injunction prohibiting Defendants from initiating reimbursement claims using confessions of judgment or using confessions of judgment as a means of collecting jail fees. (App. 32; R. Doc. 9 ¶¶ 183–84.) If such an injunction were granted, the ever-present threat of a filed-and-entered confession of judgment "without action" would be lifted. *See* Iowa Code § 676.1. That would also remove the possibility of an automatic court order requiring Plaintiffs to make additional payments required under the terms of the confessions of judgment. The requested injunctive relief would, therefore, provide redress.

In short, Plaintiffs' requested relief would remove the "stick" Defendants wield to compel extrajudicial payments of jail fees. (*See* App 7–11; R. Doc. 9 ¶¶ 25–50.) This requested relief need not "guarantee" Plaintiffs' eventual success in challenging the jail fees; so long as it "'remove[s]' a 'barrier'" to doing so, it provides adequate redress. *Fowler v. Benson*, 924 F.3d 247, 254 (6th Cir. 2019). The salient feature is that options available to Defendants under such an injunction or order for declaratory relief would be those required by the Fourteenth Amendment—as well as those that comply with Iowa law—and would not include the entry or threat of entry of confessed judgment without due process of law.

Accordingly, Plaintiffs adequately pleaded each element of standing.

### D. If this Court Affirms the District Court's Standing Decision, It Must Vacate the Rule 12(b)(6) Decision as an Excess of Jurisdiction.

If this Court disagrees with Plaintiffs and affirms the district court's dismissal on jurisdictional grounds, it should vacate the remainder of the district court's opinion. Once the district court determined it did not have jurisdiction to hear Plaintiffs' claims, its decision on the merits of Count 1 became a nullity. For a court to reach the merits "when it has no jurisdiction to do so is, by very definition, for a court to act ultra vires." *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 101–02 (1998). "Jurisdiction is power to declare the law, and when it ceases [or fails to exist in the first instance], the only function remaining to the court is that of announcing the fact and dismissing the cause." *Starr v. Mandanici*, 152 F.3d 741, 752 (8th Cir.

1998) (Beam, J. & Loken, J. concurring). Thus, if this Court sustains the district court's standing analysis, it must vacate the merits decision as an exercise of impermissible "hypothetical jurisdiction." *Steel Co.*, 523 U.S. at 94.

### III. The District Court's Alternative Holding that Plaintiffs Failed to State a Procedural Due Process Claim Was Erroneous.

After deciding it did not have jurisdiction to hear Plaintiffs' claims, the district court nevertheless engaged in a truncated merits analysis. Setting aside this procedural misstep, *see supra* Part II.D, the district court's analysis of the procedural due process claim was itself erroneous. The district court failed to reach the obvious conclusion that Defendants deprived Plaintiffs of their property, and therefore did not reach either the seminal cases on the due process implications when confessions of judgment are utilized, *Overmyer*, 405 U.S. 174; *Swarb v. Lennox*, 405 U.S. 191 (1972); or the governing test for determining what amount of process is due, *Mathews v. Eldridge*, 424 U.S. 319 (1976). Accordingly, if the Court reaches the district court's Rule 12(b)(6) dismissal, it should vacate and remand for the district court to address these issues in the first instance.

"[A] § 1983 procedural due process claim turns on (1) whether the state actor's decision impacted a protected liberty or property interest, and if so, (2) what process was constitutionally 'due.'" *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Mathews*, 424 U.S. at 332–33). Where there is "no process at all," courts "need not go so far . . . to say what kind of process [the government] must provide."

*Helton v. Hunt*, 330 F.3d 242, 249 (4th Cir. 2003). Indeed, this Court has observed that where an individual is "afforded no notice . . . and no opportunity to be heard either before or after the punitive action was taken, . . . [a plaintiff's] chance of success . . . is a virtual certainty." *Kroupa*, 731 F.3d at 820.

To justify dismissal for failure to state a claim, the district court flipped Rule 12(b)(6) on its head, making factual findings contrary to the allegations in the FAC and declining to draw reasonable inferences in Plaintiffs' favor. Specifically, the district court based its 12(b)(6) holding on a factual assumption that Plaintiffs paid their jail fees "voluntarily." (App. 249; R. Doc. 34, at 14.) That finding was improper at this stage of the proceedings and utterly at odds with the allegations in the FAC. But even if it were an accurate description of the compelled payments and seizures of money, such a finding would not defeat Plaintiffs' procedural due process claim.

Reaching the obvious conclusion that Defendants deprived Plaintiffs of their property by collecting jail fees, the question remains what process is due. Because Plaintiffs alleged Defendants provided no process whatsoever, Plaintiffs have pleaded sufficient allegations to state a claim for relief.

### A. The District Court Erroneously Held There Was No Deprivation Because It Inappropriately Found Plaintiffs Voluntarily Paid Jail Fees.

The sole basis for the court's conclusion that Plaintiffs failed to state a claim for denial of procedural due process was that Defendants' seizure and collection of

fees from Plaintiffs did not constitute a deprivation of property. And the sole basis for that determination was a *factual* finding: that Plaintiffs—whom Defendants required to sign confessions of judgment while still in custody, who (in Mr. Sayers's case) had cash seized by Defendants upon booking at the jail, and who then (in Ms. Roberts's case) paid fees only after a uniformed deputy threatened further law enforcement contact—must have paid the fees "voluntarily." (App. 249; R. Doc. 34, at 14.) That finding flatly contradicts Plaintiffs' allegations and constitutes reversable error. The district court's ruling that Defendants did not deprive Plaintiffs of their money must, therefore, be vacated.

Upon review of dismissal under Rule 12(b)(6), this Court "construe[s] the complaint liberally, taking all allegations as true, and will affirm only if it appears beyond a doubt that [the plaintiff] cannot prove any set of facts in support of the claim." *Booker v. City of St. Louis*, 309 F.3d 464, 467 (8th Cir. 2002). If multiple inferences can be drawn from the allegations, district courts should not grant dismissal "as long as at least one plausible reading" of the complaint would allow for liability of the defendant. *Norfolk & Dedham*, 122 F.4th at 316. "Which inference will prove to be correct is not an issue to be determined by a motion to dismiss." *Hamilton*, 621 F.3d at 819. When a district court fails to accept a plaintiff's allegations at the motion to dismiss stage—and instead substitutes its own judgment—its decision must be reversed. *E.g.*, *id.*

The amounts collected by Defendants are clearly deprivations of Plaintiffs' property within the meaning of the Fourteenth Amendment. "[T]o determine whether due process requirements apply in the first place, [courts] look . . . to the nature of the interest at stake." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570–71 (1972). At a minimum, Due Process protects interests to which individuals "have a legitimate claim of entitlement." *Id.* at 577.

The nature of Plaintiffs' interests is clearly among those protected by the Fourteenth Amendment, such that Plaintiffs' loss of their money to Defendants amounts to a deprivation. This Court has acknowledged that a deprivation occurs when the government seizes property. *Walters v. Wolf*, 660 F.3d 307, 313 (8th Cir. 2011); *Parrish v. Mallinger*, 133 F.3d 612, 615 (8th Cir. 1998). The same applies to claims by the government as statutory recompense for fees related to incarceration. *Mickelson v. Cnty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016).[5] In other words,

---

[5] See *Burns v. Pa. Dep't of Corrs.*, 544 F.3d 279, 287 (3d Cir. 2008) for a discussion on the "bundle of rights" theory of property. *See also 3M Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 858 F.3d 561 (8th Cir. 2017) (referring to the "bundle of rights"). Under that formulation, any interference with a property right traditionally embraced within the "bundle" amounts to a deprivation of that property right. *Burns*, 544 F.3d at 287 (citing *Dolan v. City of Tigard*, 512 U.S. 374 (1994); *Hodel v. Irving*, 481 U.S. 704 (1987); *Andrus v. Allard*, 444 U.S. 51 (1979); *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149 (1978); *Henneford v. Silas Mason Co.*, 300 U.S. 577 (1937)). In *Burns*, the mere assessment of bills to an inmate trust account "constituted the deprivation of a protected property interest for purposes of procedural due process," without the government having actually seized any money. 544 F.3d at 291. Of course, Defendants have gone well beyond assessing debt by actually seizing and/or collecting Plaintiffs' money.

when individuals have a "property interest in the [money] used to pay" amounts assessed by the government, the challenged policies "implicate[] procedural due process." *Id.* at 923–24.

In analyzing whether a deprivation occurred, the district court ignored Plaintiffs' allegations and reached a factual finding unsupported by the pleadings. Despite Plaintiffs' extensive allegations that Defendants "seized" money from Plaintiffs and "compelled" further payment (App. 1, 4, 5, 7–11, 24, 25, 28; R. Doc. 9 ¶¶ 1, 11, 13, 25–50, 121, 122, 133, 134, 150), the district court found that "plaintiffs generally voluntarily paid defendants money towards the jail fees" (App. 249; R. Doc. 34, at 14). Yet, Plaintiffs pleaded *the exact opposite*. The district court's finding that these seizures and subsequently "compelled" payments were voluntary was entirely divorced from Plaintiffs' allegations.

There is no reading of the FAC that would allow a finding that the Plaintiffs' actions were anything other than involuntary. Defendants physically took cash from Mr. Sayers. (App. 4, 25; R. Doc. 9 ¶¶ 11, 133, 134.) Defendants required payment each month under the terms of the documents Plaintiffs signed *while detained at the jail*. (App. 8, 13; R. Doc. 9 ¶¶ 30, 58–62.) Plaintiffs signed these documents because Defendants—their jailers—instructed them to and because Plaintiffs felt they had to sign to be released. (App. 22, 23, 25; R. Doc. 9 ¶¶ 106, 118, 135.) For her part, Ms. Roberts began paying only after "a Sheriff's deputy visited her home," because

42

she wanted to ensure that—"as the deputy put it to her—the Department would not bother her." (App. 49; R. Doc. 9 ¶ 11.) Those allegations support a reasonable inference that Plaintiffs did not pay voluntarily. At best, whether the payments were in fact voluntary is a question of fact that must be tested through the discovery process. *See supra* Part II.B.1 (citing *Supervalu*, 870 F.3d at 773).

In holding there had been no deprivation, the district court imported the standard from cases involving voluntary resignation from employment. (App. 245; R. Doc. 34, at 10 (citing *Yearous v. Niobrara Cnty. Mem'l Hosp. ex rel. Bd. Of Trs.*, 128 F.3d 1351 (10th Cir. 1997)).) Employment cases are of limited utility here, but even in those circumstances voluntariness may be absent where the conditions of employment were so "difficult that a reasonable person would feel compelled to resign." *Yearous*, 128 F.3d at 1356. This Court has similarly acknowledged that a "resignation may be found involuntary if, from the totality of the circumstances, it appears . . . an employee was coerced." *Angarita v. St. Louis Cnty.*, 981 F.2d 1537, 1544 (8th Cir. 1992). Those circumstances may include instances where employees were "not permitted to leave without resigning first" and "a very restricted amount of time was given to decide." *Id.* at 1545. The same is true here. Indeed, even the district court acknowledged that certain facts could show Plaintiffs were "coerce[d]," "perhaps unconstitutionally," to pay. (App. 265; R. Doc. 36, at 11.) As such, even if the absence of voluntariness were a legal requirement to allege a procedural due

process violation, the FAC's allegations support the reasonable inference that Plaintiffs' payments were coerced.

The district court's dismissal of Plaintiffs' claim on grounds that they supposedly paid jail fees "voluntarily" was erroneous in another way: the court utterly failed to account for the involuntary nature of the confessions of judgment imposed on Plaintiffs while they were in jail, which Defendants then used to compel payment. A confession of judgment is not valid unless it meets the Supreme Court's "voluntary, intelligent, and knowing" standard. *Overmyer*, 405 U.S. at 185. That test requires assessing whether "the contract is one of adhesion, [whether] there is great disparity in bargaining power, and [whether] the debtor receives nothing for" signing. *Id.* at 188. Plaintiffs alleged the presence of each one of these factors. (App. 13; R. Doc. 9 ¶¶ 58–62.)[6] Because those documents were entered involuntarily, any payments Plaintiffs made are likewise involuntary. *E.g.*, *Croft v. Westmoreland Cnty. Child. & Youth Servs.*, 103 F.3d 1123, 1125 n.1 (3d Cir. 1997) (rejecting suggestion that voluntariness defeated due process claim when relenting party was coerced).

---

[6] The district court never reached this issue. If it had, it would have been incumbent on Defendants to demonstrate the validity of the purported waivers. *Fuentes*, 407 U.S. at 94 (noting "appellees made no showing whatever" that signatories were actually aware of the terms of the contractual waivers). Courts have described this as a "heavy burden." *Gonzalez v. Hidalgo Cnty.*, 489 F.2d 1043, 1046 (5th Cir. 1973); *Rau v. Cavenaugh*, 500 F. Supp. 204, 207 (D.S.D. 1980). Defendants have made no such showing or, for that matter, any showing at all on this issue.

At best, there may ultimately be a factual dispute as to whether Plaintiffs signed the forms and paid their jail fees voluntarily; of course, that dispute would be tested with evidence.[7] At this stage, any reading of the FAC requires the Court to accept that the payments were not voluntary. Therefore, the Court should vacate the district court's inappropriate factual findings and remand for further proceedings.

### B. Plaintiffs Stated a Claim by Alleging that Defendants Provided No Process Whatsoever.

Because a deprivation occurred, "the question remains what process is due." *Mickelson*, 823 F.3d at 924. While due process is a flexible concept, it demands <u>some</u> process. In situations where process is completely absent following the deprivation of property or some other right, defendants violate procedural due process. *Wisconsin v. Constantineau*, 400 U.S. 433 (1971); *Kroupa*, 731 F.3d 813. Defendants cannot overcome those requirements by relying on confessions of judgment, where the necessary components are missing. *Overmyer*, 405 U.S. at 174.[8] The district

---

[7] As part of the preliminary injunction proceedings, Ms. Roberts and Mr. Sayers testified in sworn declarations that they signed the confessions of judgment because they believed they had to. (App. 97–98, 102–03; R. Docs. 11-13, at 3–4, 11-14, at 3–4.) The payments were made due to Defendants' collection efforts. (*Id.*) The evidence—like the pleadings—will ultimately show the signatures and payments were not voluntary.

[8] Decided the same day as *Overmyer*, *Swarb* repeated the voluntary, intelligent, and knowing standard, while leaving in place the lower court's ruling that indigent individuals could proceed with class claims that the confessions of judgment at issue violated due process because the documents were "based upon a waiver concept without adequate understanding." 405 U.S. at 199.

court did not reach the process due; therefore, the Court should reverse and remand for the district court to assess that issue in the first instance. If the Court reaches this issue, Plaintiffs' allegations of the total lack of process suffice to state a claim.

For well over a century, "the central meaning of procedural due process has been clear: 'Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes*, 407 U.S. at 80 (quoting *Baldwin v. Hale*, 68 U.S. 223, 233 (1863)). In "extraordinary situations," the government may "postpon[e] notice and an opportunity for a hearing." *Id.* at 91. But no matter the time at which process is due, courts cannot "presume acquiescence in the loss of fundamental rights" pursuant to terms of confession of judgment documents. *Overmyer*, 405 U.S. at 186.

Defendants collected jail fees from Plaintiffs without adequate notice. Any notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Where a notice "does not advise . . . of the availability of a procedure," it is constitutionally deficient. *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 15 (1978). The Room and Board Confession of Judgment document did not advise Plaintiffs of their procedural rights. (App. 10; R. Doc. 9 ¶ 40.) Nor did it inform Plaintiffs they were waiving any defenses. (*Id.*) Rather, it merely stated that

Defendants "can file the necessary legal proceedings . . . to collect unpaid amounts . . . and that in such proceedings this document will be filed as a Confession of Judgment of the above balance due." (App. 39; R. Doc. 9-2.) Because Defendants provided no opportunity to be heard, their purported notice similarly failed to inform Plaintiffs of "steps [they] should take" to challenge Defendants' decision to charge jail fees. *Elder v. Gillespie*, 54 F.4th 1055, 1064 (8th Cir. 2022).

Defendants likewise provided no opportunity to be heard. To comply with the Fourteenth Amendment, there must be an opportunity to be heard "at a meaningful time and in a meaningful manner." *Fuentes*, 407 U.S. at 80. Most often, that opportunity to be heard "must be granted at a time when the deprivation can still be prevented." *Id.* at 81. "Of course, for the specific post-deprivation remedy in place to satisfy due process, the remedy must be adequate." *Mickelson*, 823 F.3d at 929. At no point did Defendants provide Plaintiffs—or anyone else—an opportunity to be heard. (App. 28; R. Doc. 9 ¶ 152.) Defendants conceded their "general process" of imposing and collecting jail fees without judicial review includes the signing of a confession of judgment document, phone calls, collection letters, home visits by sheriff's deputies, and initiating a reimbursement claim via the filing of a confession of judgment. (App. 284–86; R. Doc. 36, at 30–32.) None of those components of Defendants' so-called "process" provide any opportunity to be heard—and

Defendants have never attempted to argue they provide an opportunity to be heard—much less at a meaningful time and meaningful place.

Faced with allegations of an utter lack of process, courts have little difficulty finding a violation of procedural due process. *See, e.g.*, *Kroupa*, 731 F.3d at 820; *Helton*, 330 F.3d at 249; *Todman v. Mayor of Balt.*, 631 F. Supp. 3d 314, 339 (D. Md. 2022); *Berry v. Hennepin Cnty.*, No. 20-cv-2189, 2021 WL 4427215, at \*9 (D. Minn. Sept. 27, 2021); *Williams v. Cook Cnty.*, No. 18-cv-1456, 2018 WL 4361946, at \*10 (N.D. Ill. Sept. 13, 2018); *C. Line, Inc. v. City of Davenport*, 957 F. Supp. 2d 1012, 1043 (S.D. Iowa 2013); *Kelley v. Mayhew*, 973 F. Supp. 2d 31, 46 (D. Me. 2013). Of course, even in the limited instances where Defendants actually do file a confession of judgment in court, a post-deprivation remedy in the form of an uncontestable confessed judgment does not suffice. *E.g.*, *Fuentes*, 407 U.S. 67; *Noatex Corp. v. King Constr. of Houston, LLC*, 732 F.3d 479, 485–86 (5th Cir. 2013); *Cmty. Thrift Club, Inc. v. Dearborn Acceptance Corp.*, 487 F. Supp. 877 (N.D. Ill. 1980). Simply put, there is no opportunity to be heard here that satisfies the Fourteenth Amendment.

Should the Court reach this question, it should hold that Plaintiffs have stated a claim. Plaintiffs have alleged sufficient facts to show that Defendants provided no process whatsoever, and the Court should reverse the district court's dismissal.

## IV. The District Court Erred in Denying Leave to Amend the Pleadings Solely on the Basis of Delay.

When the district court dismissed Plaintiffs' procedural due process claim—on bases neither party had briefed or argued—it should have granted Plaintiffs' Motion to Amend. The district court abused its discretion in two respects: (1) failing to grant post-dismissal leave to correct the purported jurisdictional defects in the FAC; and (2) denying leave solely on the basis of delay, misconstruing when Plaintiffs were on notice. Therefore, if the Court affirms the dismissal on standing, the Court should reverse the district court's denial of the Motion to Amend.

Parties "remain free where dismissal orders do not grant leave to amend to seek vacation of the judgment under Rules 59 and 60 of the Federal Rules of Civil Procedure and offer an amended complaint in place of the dismissed complaint." *Quartana v. Utterback*, 789 F.2d 1297, 1300 (8th Cir. 1986). "A district court may appropriately deny leave to amend 'where there are compelling reasons 'such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment.'" *Moses.com Secs., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005). "In most cases, delay[] alone is insufficient justification; prejudice to the nonmovant must also be shown." *Id.* Courts "may not ignore the Rule 15(a)(2) considerations that favor affording parties an opportunity

49

to test their claims on the merits." *U.S. ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 824 (8th Cir. 2009).

The supposed jurisdictional defects articulated by the district court were easily addressed by the proposed amendment. A "district court's refusal to permit amendment . . . to correct [jurisdictional] defects [is] not in keeping with the liberal amendment policy" of the federal rules, "and constitute[s] [an] abuse of discretion." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216–17 (8th Cir. 1987). The SAC clarified, to the extent not already clear in the FAC, that Plaintiffs challenged not only the use of confessions of judgment, but all of Defendants' policies, practices, and customs relating to jail fees. (App. 328; R. Doc. 37-1.) Those amendments resolved any jurisdictional issues identified by the district court. Of course, "[s]tanding is a jurisdictional issue." *Disability Support Alliance v. Heartwood Enters., LLC*, 885 F.3d 543, 547 (8th Cir. 2018). Therefore, the district court erred in denying Plaintiffs leave to correct this issue.

Additionally, the district court erroneously determined that Plaintiffs were on notice of the supposed deficiencies in the FAC when Defendants filed their motion to dismiss. Undue delay may exist where a plaintiff is put "on notice of the possible deficiencies in their original complaint" and does not seek leave to amend. *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 963 (8th Cir. 2015). But Plaintiffs were not on notice of any deficiencies in the FAC regarding causation or redressability until

50

the district court issued its dismissal decision. Defendants' motion to dismiss argued only that "Plaintiffs have not alleged a concrete and particularized injury-in-fact." (R. Doc. 12-1, at 9–11.) It did not even mention the sole grounds on which the court granted that motion: the causation or redressability prongs of the standing analysis. (*Id.*) Indeed, the district court understood "[t]he substance of defendants' motion to dismiss was the absence of injury in fact." (App. 409; R. Doc. 40, at 2.) Because Plaintiffs could not have been "on notice" of the purported deficiencies in the FAC until the district court issued its opinion, the district court's denial of the Motion to Amend due to delay was an abuse of discretion.

Regardless, the district court relied on *Ash*, 799 F.3d 957, to determine that "plaintiffs were on notice from defendants' motion to dismiss about the fundamental problem with their claims." (App. 409; R. Doc. 40, at 2.) *Ash*, however, is inapposite because it did not involve purported jurisdictional defects and the plaintiffs there were actually put on notice by the defendants' motion to dismiss. In *Ash*, plaintiffs brought claims under the Fair Labor Standards Act, and defendants argued in the district court that that the plaintiffs had not identified "which, if any, of the Defendants is the Plaintiffs' actual employer." *Ash v. Anderson Merchs., LLC*, No. 14-cv-00358-DW, 2014 WL 11394891, at *1 (W.D. Mo. July 2, 2014). On appeal, this Court affirmed dismissal on the grounds argued by the defendants and

determined the plaintiffs were not entitled to post-dismissal leave to amend their pleadings. *Ash*, 799 F.3d at 961, 963–64.

The difference here could not be starker. Defendants made a single argument in their motion to dismiss with regard to standing: Plaintiffs had not suffered injury-in-fact. (R. Doc. 12-1, at 9–11.) Plaintiffs briefed that issue. (R. Doc. 22, at 6–9.) Defendants never affirmatively briefed either causation or redressability.[9] Causation and redressability were addressed, for the first time, when the district court issued its order dismissing the FAC. Plaintiffs, therefore, were not on notice with regard to redressability and causation until the Court issued its dismissal order. The Motion to Amend, filed within Rule 59's twenty-eight-day deadline, was therefore not unduly delayed.[10]

The Supreme Court's direction to district courts considering motions to amend is that plaintiffs "ought to be afforded an opportunity to test [their] claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Rule 59 reflects that direction.

---

[9] Defendants made only an oblique reference to the notion of redressability in their reply in support of their motion to dismiss. There, they asserted that "Plaintiffs' alleged injuries will not be remedied if the Court rules in their favor." (R. Doc. 23, at 2.) To the extent Defendants raised redressability in reply, Plaintiffs did not have an opportunity to brief the issue until the district court's dismissal order.

[10] The district court failed to address whether any delay prejudiced Defendants. *Moses.com*, 406 F.3d at 1065. For their part, Defendants never argued prejudice. (*See* R. Doc. 38.)

Affirming the district court's denial would serve the exact opposite of what the federal rules require: liberal leave to amend pleadings when justice so requires, unless the plaintiffs have acted in bad faith or in a negligent manner.

If the Court affirms the district court's ruling dismissing Plaintiffs' claim on standing grounds, the Court should reverse the denial of Plaintiffs' post-dismissal Motion to Amend.

## CONCLUSION

The Court should reverse the district court's dismissal of Count 1 on the basis of standing, vacate the district court's Rule 12(b)(6) analysis, and remand for further proceedings. If the Court affirms the district court's standing decision, it should vacate the district court's ruling on the merits and reverse the district court's denial of the Motion to Amend.

Dated: June 13, 2025

Respectfully submitted,

/s Charles Moore
Charles Moore
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
T: (202) 861-5226
cmoore@publicjustice.net

Rita Bettis Austen
Thomas Story
Shefali Aurora
ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Suite 808
Des Moines, IA 50309-2317
T: (515) 207-0567
rita.bettis@aclu-ia.org
thomas.story@aclu-ia.org
shefali.aurora@aclu-ia.org

Leslie A. Bailey
Public Justice
475 14th Street, Suite 610
Oakland, California 94612
T: (510) 622-8203
lbailey@publicjustice.net

Brandon R. Underwood
Michael D. Currie
Sarah Golwitzer
Kelcy Whitaker
Fredrikson & Byron P.A.
111 East Grand Ave., Suite 301
Des Moines, IA 50309-1884
T: (515) 242-8900
bunderwood@fredlaw.com
mcurrie@fredlaw.com
sgolwitzer@fredlaw.com
kwhitaker@fredlaw.com

Thomas P. Frerichs
Frerichs Law Office, P.C.
106 E. 4th Street, P.O. Box 328
Waterloo, IA 50704-0328
T: (319) 236-7204
tfrerichs@frerichslaw.com

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure and the Local Rules for the United States Court of Appeals for the Eighth Circuit, I certify the following:

1. This brief complies with Fed. R. App. P. 32(g) because, excluding the parts of the document exempted by Rule 32(f), this document contains 12,997 words.

2. This brief complies with L.R. 28A(h) because the electronic version of this brief and the addendum have been scanned for viruses and no viruses were detected.

3. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the brief has been prepared in Times New Roman 14-point font using Microsoft Word.

*/s/ Charles Moore*
Charles Moore
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
T: (202) 861-5226
cmoore@publicjustice.net

**Certificate of Service**

I certify that on June 13, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all attorneys who have entered an appearance in this case.

/s/ *Charles Moore*
Charles Moore