CASE NO. 25-1475

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

LETICIA ROBERTS, CALVIN SAYERS, ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED,

*Plaintiffs-Appellants*,

v.

SHERIFF TONY THOMPSON, IN HIS OFFICIAL CAPACITY, AND BLACK HAWK COUNTY,

*Defendants-Appellees*.

_____

On Appeal from the United States District Court for the Northern District of Iowa, Case No. 6:24-cv-2024 (Hon. C.J. Williams)

_____

**REPLY IN SUPPORT OF MOTION OF CATO INSTITUTE FOR LEAVE TO FILE BRIEF AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS**

_____

Thomas A. Berry
 *Counsel of Record*
Dan Greenberg
Caitlyn A. Kinard
CATO INSTITUTE
1000 Massachusetts Ave., N.W.
Washington, DC 20001
(443) 254-6330
tberry@cato.org

Dated: June 26, 2025

## 1. The Cato Institute's Brief Meets the Federal Rules' Standard.

A motion for leave to file an *amicus* brief should be granted if the movant demonstrates an "interest," the proposed brief "is desirable," and "the matters asserted are relevant to the disposition of the case." Fed. R. App. P. 29(a)(3). The Cato Institute's brief passes each test.

First, Cato has an interest in this case: The promotion and defense of due process under the law is central to Cato's mission. That is why Cato has filed many other *amicus* briefs supporting due process in other cases. *See, e.g.*, Brief of the Cato Institute as *Amicus Curiae* in Support of Petitioner, *Dowd v. United States*, No. 24-1231 (U.S. Sup. Ct. June 20, 2025) (arguing that due process requires a judge to be impartial); Brief of the Cato Institute and the Goldwater Institute as *Amici Curiae* in Support of Respondent, *United States v. Rahimi*, 602 U.S. 680 (2024) (No. 22-915) (arguing for pre-deprivation procedures before stripping gun owners of rights); Brief of the Cato Institute as *Amicus Curiae* in Support of Petitioner, *Pennington v. West Virginia*, 143 S. Ct. 2493 (2023) (No. 22-747) (arguing that a county bail system violated due process). Furthermore, Cato's interest in the outcome of this case is magnified by a separate trend: Standing doctrine is routinely abused in similar cases to prevent litigants' claims from being heard on the merits. More generally, public-interest attorneys and their clients (e.g., public policy foundations and legal scholars) routinely file *amicus* briefs because of their interest in the sound development of the

law. Here, Cato has a good-faith interest in the outcome of this case as it pertains to both due process and standing doctrine.

Second, Cato's brief is desirable. Cato's *amicus* brief compares Black Hawk County's use of confessions of judgment to the laws and practices of many other jurisdictions that disfavor their use—a perspective that was largely unexplored in the parties' briefing. Furthermore, Cato's brief explains how the district court improperly conflated its merits and standing analyses, and that explanation illuminates how the Court could best resolve the issues in this case. In short, the additional assistance that Cato's brief offers this Court satisfies the desirability standard.

Third, the matters asserted in Cato's brief are unequivocally relevant to the disposition of this case. Cato's brief addresses both the district court's flawed standing analysis that led to this appeal and the due process concerns that the district court discussed below when it held that the Appellants failed to state a viable cause of action. Both of these issues are properly before this Court.

In sum, Cato's brief meets all three of Rule 29(a)(3)'s substantive requirements for filing an *amicus* brief, and this Court should therefore grant Cato's motion for leave to file.

**2. Appellees' Opposition Misrepresents and Misapplies the Law.**

Appellees' Objection to the *Amici Curiae* briefs directs a number of shotgun

arguments at *amici* generally, but Appellee's arguments miss their targets. Of course it is true that this Court has discretion to grant or deny *amicus* briefs, but with respect to Cato's *amicus* brief Appellees misconstrue the caselaw. In fact, Appellees' own citations demonstrate that, as a general matter, courts have only denied leave to file when the brief did not follow the rules or when it added nothing new to the parties' briefs. Neither situation has occurred here.

First, Appellees' argument that an *amicus* brief must remain "neutral" and "balanced" was explicitly rejected in the *Neonatology* case in the Third Circuit. *Neonatology Assocs., P.A. v. Comm'r*, 293 F.3d 128, 129, 131 (3d Cir. 2002). (observing that "it is not easy to envisage an amicus who is 'disinterested' but still has an 'interest' in the case."); *see also Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970) ("by the nature of things an amicus is not normally impartial."). The court in *Neonatology* also acknowledged that "[a] restrictive policy with respect to granting leave to file may also create at least the perception of viewpoint discrimination . . . [and] may also convey an unfortunate message about the openness of the court." *Neonatology*, 293 F.3d at 133. Appellees are mistaken to argue that *amicus* briefs that "align" with a party's position should be rejected on that basis; that is not the law and never has been.

Second, Appellees' argument that *amicus* briefs are unnecessary when parties are adequately represented misses the mark. The nature of an *amicus* brief is that it

3

provides information that the parties do not: "Even when a party is very well represented, an amicus may provide important assistance to the court." *Id.* at 132. Indeed, *amicus* briefs are often submitted alongside the briefs of well-represented parties in circuit courts and the Supreme Court. Here, Cato's brief offers important insight into due process concerns and the impact this case could have on standing doctrine in the future.

Third, Appellees' argument that Cato's brief is duplicative because it "merely restates" Plaintiffs' arguments is groundless. In fact, Cato's brief adds several new dimensions to the parties' briefing. The *amicus* brief analyzes due process concerns differently from the Appellants' brief: Cato's brief highlights the coercive aspects of confessions of judgment and compares how other jurisdictions treat confessions of judgment. Cato's brief also provides a distinct perspective on the district court's erroneous standing analysis by explaining how the district court conflated its standing analysis with its merits analysis. Finally, Cato's brief also contains a practical discussion of Black Hawk County's incentives to collect jail fees. All three of these matters differentiate Cato's brief from other submissions, and they provide a unique and valuable perspective to the Court for the resolution of this case. A brief is "additive," not duplicative, when it "offer[s] a different analytical approach to the legal issues," "highlight[s] factual, historical, or legal nuance glossed over by the parties," "provid[es] practical perspectives on the consequences of potential

4

outcomes," or "identif[ies] how other jurisdictions . . . have approached one or other aspect of a legal question or regulatory challenge." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 976 F.3d 761, 763 (7th Cir. 2020).

More generally, Appellees cite extensively to opinions that spring from narrow and peculiar fact situations, none of which apply here. What follows is an abbreviated list of the decisions that Appellees' opposition relies upon, along with a corresponding set of explanations of why those opinions are inapposite.

- In *In re Halo Wireless, Inc.,* an *amicus* brief was not accepted for filing because the party did not request permission to file and because the party seeking leave to file was allowed to submit testimony at the district court level. *See* 684 F.3d 581, 595 (5th Cir. 2012).

- In *Nat'l Org. for Women, Inc. v. Scheidler*, an *amicus* brief was not accepted for filing because "[t]he lawyer for one of the would-be amici curiae in [the] case admit[ted] that he was paid by one of the appellants for his preparation of the amicus curiae brief . . . ." 223 F.3d 615, 617 (7th Cir. 2000).

- In *Miller-Wohl Co. v. Comm'r of Lab. & Indus.*, the court was dealing with a wholly separate issue—whether *amicus* was entitled to an award of attorneys' fees. 694 F.2d 203, 204 (9th Cir. 1982).

- In *Am. Satellite Co. v. United States*, the trial court denied an *amicus* brief

5

because *amicus* was "a few weeks away from being a litigant itself," so "the implication [was] that [*amicus*'s] real interests [were] as a litigant, not as a friend of the court." 22 Cl. Ct. 547, 549 (1991).

- In *Yip v. Pagano*, the court explained how the standard for *amicus* briefs is more demanding at the trial level: "where issues of fact as well as law predominate, the aid of amicus curiae may be less appropriate than at the appellate level where such participation has become standard procedure." 606 F. Supp. 1566, 1568 (D.N.J. 1985) (granting leave to file *amicus* brief regardless).

- In *United States v. Gotti,* the court denied *amicus* support because the brief at issue would not "assist the court in the least" because the *amicus* was completely unaware of the government's position. *See* 755 F. Supp. 1157, 1158 (E.D.N.Y. 1991).

- In *Ryan v. Commodity Futures Trading Comm'n*, the court denied a brief submitted in response to a Commodity Futures Trading Commission discipline order because it failed to raise any new arguments. 125 F.3d 1062, 1064 (7th Cir. 1997).

- In *United States v. Michigan,* the *amicus curiae* in question was simultaneously attempting to litigate. 940 F.2d 143, 146 (6th Cir. 1991).

- In the case that Appellees cite for the proposition that *amicus* should not

advocate for a party, *United States v. Microsoft Corp.*, the court granted leave to file an *amicus* brief and even allowed *amicus* to argue for ten minutes in open court. *See United States v. Microsoft Corp.*, 2002 U.S. Dist. LEXIS 26549, *14 (D.D.C. 2002) (denying the party's motion to intervene).

- In *Voices for Choices v. Illinois Bell Tel. Co.*, the court denied leave to file an *amicus* brief where the brief "essentially duplicate[d] a party's brief." 339 F.3d 542, 544 (7th Cir. 2003).

There were reasons to deny the filing of *amicus* briefs in the cases that Appellees cite that are described above, but none of those reasons are present here: Cato has not broken any rules of the court; Cato has not been paid by any party; Cato does not seek filing fees; Cato is not an actual or potential litigant; Cato is not seeking to influence a trial court. Perhaps most importantly, Cato has provided new information and a new perspective that is distinct from that provided by the parties. These facts place this case outside of the scope of the decisions that Appellees cite, and so those decisions are not relevant here. If anything, Appellees' own citations point to the practice of allowing *amicus* briefs unless there is good reason to hold otherwise—for instance, if the *amicus curiae* fails to follow the court's rules. Because there are no overriding concerns here of the kind presented in the cases Appellees cite, this Court should permit Cato to file its *amicus* brief.

## CONCLUSION

Because the "decision whether to grant leave to file must be made at a relatively early stage of the appeal . . . it is preferable to err on the side of granting leave . . . ." *Neonatology*, 293 F.3d at 132–133. The merits panel in this case should have an opportunity to consider the arguments that Cato has made in its brief and determine for itself whether they are convincing.

For the foregoing reasons, the Cato Institute's motion for leave to file should be granted.

Respectfully submitted,

/s/ *Thomas A. Berry*
Dan Greenberg
Caitlyn A. Kinard
CATO INSTITUTE
1000 Massachusetts Ave., N.W.
Washington, DC 20001
(443) 254-6330
tberry@cato.org

Dated: June 26, 2025

# CERTIFICATE OF COMPLIANCE

Counsel certifies under FRAP 32(g) that the foregoing motion meets the formatting and type-volume requirements set under FRAP 27(d) and FRAP 32(a). The motion is printed in 14-point, proportionately-spaced typeface utilizing Microsoft Word and contains 1,781 words, including headings, footnotes, and quotations, and excluding all items identified under FRAP 32(f). Per 8th Cir. R. 28A(h)(2), this document has been scanned and found virus free using Bitdefender Endpoint Security Tools.

Dated: June 26, 2025

*/s/ Thomas A. Berry*
*Counsel for Amicus Curiae*
*Cato Institute*

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court, who will enter it into the CM/ECF system, which will send a notification of such filing to the appropriate counsel.

Dated: June 26, 2025

*/s/ Thomas A. Berry*
*Counsel for Amicus Curiae*
*Cato Institute*