No. 25-1475

---

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

Leticia Roberts, Calvin Sayers;
*Plaintiffs-Appellants*

v.

Sheriff Tony Thompson, in his official capacity as Black Hawk County Sheriff; and
Black Hawk County;
*Defendants-Appellees*

---

On Appeal from the United States District Court
for the Northern District of Iowa
No. 6:24-cv-2024 (Hon. C.J. Williams)

---

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

---

Charles Moore
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
T: (202) 861-5226
cmoore@publicjustice.net

Rita Bettis Austen
Thomas Story
Shefali Aurora
ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Suite 808
Des Moines, IA 50309-2317
T: (515) 207-0567
rita.bettis@aclu-ia.org
thomas.story@aclu-ia.org
shefali.aurora@aclu-ia.org

*Counsel for Plaintiffs-Appellants*
(additional counsel listed on signature block)

i

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

ARGUMENT .......................................................................................................4

    I.    Plaintiffs' allegations are more than sufficient to plead the elements of standing. ........................................................................................4

        A.    Plaintiffs suffered injury-in-fact in the loss of their money, the absence of process, and the imminent risk of future harm......6

        B.    Plaintiffs adequately pleaded Defendants caused injury through their overall scheme and through the use of confessions of judgment. .........................................................8

        C.    Federal courts can provide redress though monetary damages, injunctive relief, and/or declaratory relief..............................10

    II.    There is no applicable process available in state court and, even if there were, Plaintiffs need not wait for Defendants to subject them to it to have standing..............................................................................14

    III.    The sole basis for the district court's dismissal of Count 1 was an impermissible factual finding that has no basis in the law..................19

    IV.    Defendants' proposed new rule on post-dismissal motions to amend the pleadings is unworkable and would render Rule 59 meaningless.22

    V.    Defendants' argument that the Court should dismiss Plaintiffs' nonexistent "access-to-courts" claim is irrelevant. ..........................24

CONCLUSION ..................................................................................................26

**Cases**

*Andrus ex rel. Andrus v. Arkansas*,
    197 F.3d 953 (8th Cir. 1999) ......................................................................13

*Ash v. Anderson Merchs., LLC*,
    799 F.3d 957 (8th Cir. 2015) ................................................................22, 23

*Beatty v. Gilman*,
    718 F. Supp. 3d 166 (D. Conn. 2024)............................................................5

*Berndsen v. N.D. Univ. Sys.*,
    7 F.4th 782 (8th Cir. 2021) ..........................................................................25

*Braden v. Wal-Mart Stores, Inc.*,
    588 F.3d 585 (8th Cir. 2009) .......................................................................20

*Bull v. Keenan*,
    69 N.W. 433 (Iowa 1896) ......................................................................16, 17

*Carey v. Piphus*,
    435 U.S. 247 (1978)......................................................................................13

*Christopher v. Harbury*,
    536 U.S. 403 (2002)......................................................................................25

*Coe v. Armour Fertilizer Works*,
    237 U.S. 413 (1915)......................................................................................25

*Collins v. Yellen*,
    594 U.S. 220 (2021)........................................................................................6

*D.H. Overmyer Co. v. Frick Co.*,
    405 U.S. 174 (1972)........................................................................................2

*Dullard v. Phelan*,
    50 N.W. 204 (Iowa 1891) ............................................................................16

*Foman v. Davis*,
    371 U.S. 178 (1962)......................................................................................23

*Fuentes v. Shevin*,
  407 U.S. 67 (1972)......................................................................18, 19, 25

*Gilman v. Heitman*,
  113 N.W. 932 (Iowa 1907) .......................................................................17

*Graff v. Aberdeen Enterprizes, II, Inc.*,
  65 F.4th 500 (10th Cir. 2023) ....................................................................5

*Holt Civic Club v. City of Tuscaloosa*,
  439 U.S. 60 (1978)....................................................................................13

*Hughes v. City of Cedar Rapids*,
  840 F.3d 987 (8th Cir. 2016) ...........................................................*passim*

*Ivey v. Audrain Cnty.*,
  968 F.3d 845 (8th Cir. 2020) ...................................................................24

*Johnson v. City of Shelby, Miss.*,
  574 U.S. 10 (2014) (per curiam)...........................................................3, 25

*Krantz v. City of Fort Smith*,
  160 F.3d 1214 (8th Cir. 1998) ...................................................................8

*L.H. v. Independence Sch. Dist.*,
  111 F.4th 886 (8th Cir. 2024) ....................................................................1

*Larson v. Valente*,
  456 U.S. 228 (1982)...........................................................................2, 10, 12

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992).......................................................................1, 2, 9

*In re Marriage of Cutler*,
  588 N.W.2d 425 (Iowa 1999) ...................................................................15

*Mickelson v. County of Ramsey*,
  823 F.3d 918 (8th Cir. 2016) .....................................................................9

*Mullen v. Russell*,
  46 Iowa 386 (1877)...................................................................................16

*Murthy v. Missouri,*
    603 U.S. 43 (2024)................................................................8

*Ohm v. Dickerman*,
    50 Iowa 671 (1879).............................................................16

*Olim v. Wakinekona*,
    461 U.S. 238 (1983).......................................................21, 22

*Planned Parenthood of N.Y. City, Inc. v. U.S. Dep't of Health &*
    *Human Servs.*,
    337 F. Supp. 3d 308 (S.D.N.Y. 2018) ................................12

*S.A.A. v. Geisler*,
    127 F.4th 1133 (8th Cir. 2025) .........................................13

*Six Star Holdings, LLC v. City of Milwaukee*,
    821 F.3d 795 (7th Cir. 2016) ..............................................7

*Sniadach v. Family Fin. Corp. of Bay View*,
    395 U.S. 337 (1969).............................................................16

*Sullins v. Iowa Dist. Ct. for Polk Cnty.*,
    No. 17-1310, 2019 WL 2523553 (Iowa Ct. App. June 19, 2019).......................15

*Sutter & Gillham PLLC v. Henry*,
    __ F.4th __, 2025 WL 2167876 (8th Cir. July 31, 2025) .....................8

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)..........................................................5, 12

*Vance v. Barrett*,
    345 F.3d 1083 (9th Cir. 2003) .........................................5, 25

*Wisconsin v. Constantineau*,
    400 U.S. 433 (1971).......................................................21, 22

*Wright v. Riveland*,
    219 F.3d 905 (9th Cir. 2000) ...........................................5, 12

**Statutes**

Iowa Code § 676.1 ......................................................2, 15, 16

**Other Authorities**

Fed. R. Civ. P. 8(a)....................................................................................25

Fed. R. Civ. P. 12(b)(6)....................................................................3, 19, 26

Fed. R. Civ. P. 54(c)................................................................................13

Fed. R. Civ. P. 59 ............................................................................22, 23

Iowa R. Civ. P. 1.1012 ......................................................................15, 17

Iowa R. Civ. P. 1.1013(1) .........................................................................15

Iowa Rules of Civil Procedure, Chapter 311 of 49th General
    Assembly (1941).................................................................................17

# INTRODUCTION

The main question in this appeal is simple: are allegations that Defendants seized and collected Plaintiffs' money without due process, while threatening future imminent harm, "sufficient . . . to support a reasonable inference that [Plaintiffs] can satisfy the elements of standing"? *See L.H. v. Independence Sch. Dist.*, 111 F.4th 886, 892 (8th Cir. 2024). The answer to this question is equally straightforward: Yes.

The parties agree Plaintiffs satisfy the first element of Article III standing, injury-in-fact. As the court below recognized, the monetary harm alleged constitutes injury-in-fact. (Br. of Pls.-Apps. ("Pls.' Br.") at 17–18.) And Defendants do not address that allegations of inadequate process also suffice to allege injury-in-fact, *Hughes v. City of Cedar Rapids*, 840 F.3d 987 (8th Cir. 2016); and the risk of imminent future harm itself amounts to injury-in-fact (Pls.' Br. at 29). Instead, Defendants offer a grab-bag of arguments to defeat Plaintiffs' clear standing. (*See* Br. of Defs.-Appellees ("Defs.' Br.").) None has merit.

First, Defendants insist they did not cause the injuries alleged in the First Amended Complaint ("FAC") (Defs.' Br. at 25), and that Plaintiffs' injuries are not redressable because *one* of the forms of relief sought by Plaintiffs—a declaration that Defendants' confessions of judgment are unlawful—"would not change" the "amount of their jail fees" (*id.* at 29–30). But those arguments miss the mark, because Plaintiffs' injuries are "fairly traceable" to Defendants' conduct, *Lujan v.*

1

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992), and Plaintiffs "need not show that a favorable decision will relieve [] *every* injury," *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982). Defendants' arguments ignore the obvious: their policies, practices, and customs—including confessions of judgment—caused Plaintiffs' injuries and the courts can redress those injuries. (Pls.' Br. at 27–37.) In sum, Defendants' arguments on causation and redressability are misplaced.

Second, Defendants are simply incorrect to suggest that Plaintiffs' allegations of inadequate process do not satisfy standing because there remains a process in state court that Plaintiffs have "willfully ignored." (Defs.' Br. at 35.) Not only has this Court rejected that plaintiffs must first go through a process before they can challenge it, *Hughes*, 840 F.3d at 994, Defendants' scheme has effectively rendered the "process" they reference non-existent. The confessions of judgment, by their very nature, allow Defendants to obtain judgment without notice or an opportunity to be heard. Iowa Code § 676.1; *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174 (1972). The limited post-judgment options available do not comport with due process, and Defendants do not even attempt to argue that they do.

Third, Defendants invent a new claim out of whole cloth—a supposed "access-to-court" claim they admit is "nowhere" in Plaintiffs' complaint (Defs.' Br. at 14)—and then argue that this straw man claim should be dismissed. According to Defendants, Plaintiffs are presenting a "theory of the case [that] is drastically

different than that presented in their complaint," and thus must be "rais[ing] a new access-to-court claim." (*Id.* at 9, 10.) This argument misses the mark. Plaintiffs have always alleged (and argued) a deprivation of property without due process—not an access-to-courts claim. Regardless, it is black-letter law that "[f]ederal pleading rules . . . do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam).

At the end of the day, Defendants' concessions and failure to dispute Plaintiffs' positions on appeal are enough for this Court to reverse the dismissal of Plaintiffs' procedural due process claim (Count 1). Plaintiffs suffered an injury-in-fact in the form of monetary harm. (Pls.' Br. at 17; Defs.' Br. at 25.) Plaintiffs also face an imminent risk of future harm. (Pls.' Br. at 18–19.) Defendants seized Mr. Sayers's property, assessed the jail fees at issue pursuant to their official policies, collected jail fees, and the confessions of judgment themselves require payment. (*Id.* at 31–32, 35.) Plaintiffs' injuries are redressable through injunctive relief, at a minimum. (*Id.* at 36.) The Court should not be distracted by Defendants' attempts to sidestep these issues and transform this appeal into something it is not.

Accordingly, the Court should reverse the district court's standing decision; vacate its Rule 12(b)(6) analysis, including its improper findings of fact; and remand for further proceedings.

**ARGUMENT**

Defendants' arguments on appeal fail to salvage the district court's rulings in this case. *First*, Plaintiffs suffered injury-in-fact, caused by Defendants, which the courts can redress. Defendants do not even address *Hughes*, 840 F.3d at 994, which all but decides the standing question. *Second*, despite Defendants' contentions that Plaintiffs "willfully ignored" process available in state court, no such process exists. Even if it did, that is not a basis to defeat standing. *Third*, there is no legal or factual basis for Defendants' proposition, erroneously adopted by the court below, that Plaintiffs' voluntarily paid their jail fees. Defendants' assertions that they did not coerce Plaintiffs' payments, at best, raise questions of fact that must be resolved through discovery. *Fourth*, Plaintiffs' post-dismissal motion to amend the pleadings ("Motion to Amend") should have been granted to correct jurisdictional defects, which Defendants do not dispute, and Defendants' attempts to contort the applicable legal standard are unavailing. *Fifth*, Defendants' arguments on access-to-courts are misguided, and the Court should decline to entertain this distraction.

## I.    Plaintiffs' allegations are more than sufficient to plead the elements of standing.

The standing analysis here is straightforward: Plaintiffs suffered injury-in-fact in the form of monetary harm, the absence of process, and the imminent risk of future harm (Pls.' Br. at 17–19); Defendants' conduct, including their confessions of

4

judgment, caused those injuries (*id.* at 19–32); and the federal courts can redress those injuries (*id.* at 32–37).

"When a federal court has jurisdiction over a case or controversy, it has a 'virtually unflagging obligation' to exercise it." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 446 (2021) (Thomas, J., dissenting). Courts across the country regularly find plaintiffs have standing to challenge fines and fees assessed by the government. *E.g.*, *Wright v. Riveland*, 219 F.3d 905, 914 (9th Cir. 2000); *Beatty v. Gilman*, 718 F. Supp. 3d 166, 180–81 (D. Conn. 2024). Federal courts likewise have little trouble exercising jurisdiction over such challenges. *E.g.*, *Graff v. Aberdeen Enterprizes, II, Inc.*, 65 F.4th 500 (10th Cir. 2023) (unconstitutional scheme to collect court debts); *Vance v. Barrett*, 345 F.3d 1083, 1091–92 (9th Cir. 2003) (finding a "clear . . . due process right in jeopardy" in requiring signature of forms authorizing deductions of costs as condition of prison employment). Defendants offer no principled reason for this Court to chart a different course.

Defendants concede or do not dispute many of the relevant components of the standing framework, including that Plaintiffs suffered injury-in-fact, Defendants' confessions of judgment cause injury by also requiring payment, and at least some of Plaintiffs' injuries are redressable through injunctive relief. (Pls.' Br. at 17–19, 35, 36; Defs.' Br. at 25.) Nevertheless, Defendants ask the Court to conclude the monetary harm "was not caused by Defendants-Appellees" (Defs.' Br. at 25) and

courts cannot provide redress because "[u]ndoing [the] confessions of judgment would not impact the fees [Plaintiffs] owe" (*id.* at 29). Defendants do not suggest *who* or *what* else could have caused the seizure and retention of Mr. Sayers's property, the collection of Ms. Roberts's money, or the complete denial of process, just that it was not Defendants. (*Id.* at 25.) Those arguments have no merit.

### A. Plaintiffs suffered injury-in-fact in the loss of their money, the absence of process, and the imminent risk of future harm.

Plaintiffs suffered three kinds of injuries: "monetary harms," "absence of process," and "the imminent risk that Plaintiffs face entry of a confessed judgment." (Pls.' Br. at 17, 19.) Defendants concede the first injury (monetary harms), ignore binding precedent on the second (absence of process), and do not dispute the third (imminent risk of harm).

*First*, the parties agree that Plaintiffs' monetary injuries satisfy the injury-in-fact requirement. (Defs.' Br. at 25; Pls.' Br. at 17–18.) Defendants quibble that Plaintiffs should have done more to "emphasize . . . the jail fees they claimed below." (Defs.' Br. at 13.) Yet, it is black letter law that a "pocketbook injury is a prototypical form of injury in fact." *Collins v. Yellen*, 594 U.S. 220, 243 (2021). Plaintiffs argued as much in their opening brief. (Pls.' Br. at 17.) Nothing more is needed to "emphasize" this injury.

*Second*, the absence of process is another injury-in-fact. Plaintiffs alleged Defendants deny them any process whatsoever. (App. 21, 28; R. Doc. 9 ¶¶ 100, 152.)

Such "allegations that the procedure is inadequate . . . sufficiently establish[] an injury in fact." *Hughes*, 840 F.3d at 994. Defendants fail to address *Hughes*, despite Plaintiffs' extensive citations (Pls.' Br. at 1, 4, 15, 17, 18, 25, 27, 28, 30, 34), and instead assert that "the mere *signing* of a confession of judgment is not an injury" (Defs.' Br. at 25 (emphasis added)). Plaintiffs have never claimed that signing a confession of judgment constitutes an injury for purposes of Count 1, but rather that Defendants use the document to "deprive[] an individual of their rights to notice and an opportunity to be heard." (Pls.' Br. at 29.) From the start, Plaintiffs alleged "Defendants provide no process by which Plaintiffs . . . can challenge the imposition and collection of jail fees." (App. 28; R. Doc. 9 ¶ 152.) Those allegations of the absence of process establish injury. Defendants cannot—and do not—refute this basic point.

***Third***, Defendants do not address Plaintiffs' argument that they face an imminent risk of future harm. (Pls.' Br. at 18, 29.) In fact, Defendants suggest such harm is indeed imminent, asserting that Plaintiffs should simply "wait to see if Defendants-Appellees file their confessions of judgment." (Defs.' Br. at 19.) A plaintiff does not have to sit back and wait for government action. *See Six Star Holdings, LLC v. City of Milwaukee*, 821 F.3d 795, 803–04 (7th Cir. 2016) (collecting cases). Where Defendants "vigorously defend[]" their practices and "never suggest[] . . . [they] would refrain from enforcement," this Court assumes

they will exercise that enforcement power. *See Krantz v. City of Fort Smith*, 160 F.3d 1214, 1217 (8th Cir. 1998). Defendants' continued assertion that they may enforce the confessions of judgment against Plaintiffs at any time unequivocally demonstrates the risk of imminent harm.

Accordingly, Plaintiffs established injury-in-fact.

### B. Plaintiffs adequately pleaded Defendants caused injury through their overall scheme and through the use of confessions of judgment.

Plaintiffs allege they suffered, or will suffer, each of the above harms pursuant to Defendants' policies, practices, and customs. (Pls.' Br. at 30–32; App. 4, 8, 9, 11; R. Doc. 9 ¶¶ 11, 28, 34, 35, 43.) In response, Defendants insist that the Court's causation analysis must be limited to whether they "used . . . confessions of judgment to force [Plaintiffs] to pay jail fees" (Defs.' Br. at 22), and argue that Plaintiffs "failed to plead any causal connection between their confessions of judgment and the jail fees they paid" (*id.* at 26). Defendants are wrong.

To establish causation at the pleading stage, a plaintiff must simply "allege[] enough to connect the dots" between a defendant's conduct and the plaintiff's injuries. *See Sutter & Gillham PLLC v. Henry*, __ F.4th __, __, 2025 WL 2167876, at *3 n.2 (8th Cir. July 31, 2025). "This is not a demanding standard." *Murthy v. Missouri*, 603 U.S. 43, 93 (2024) (Alito, J., dissenting).

As Plaintiffs have repeatedly explained, the use of confessions of judgment is but one part of Defendants' larger jail fees scheme challenged in this case. (Pls.' Br.

at 20–23.) Plaintiffs are not required to allege how each aspect of Defendants' scheme, *in isolation*, caused each specific kind of injury. (*See id.* at 20–21.) It is irrelevant whether the injuries alleged were caused by one piece of paper (a confession of judgment) or another (Defendants' written policy) or the entire scheme (Defendants' practices and customs).[1] Because the FAC alleges injures "fairly traceable" to Defendants' conduct, Plaintiffs satisfy the causation inquiry. *See Lujan*, 504 U.S. at 560.

Defendants attempt to avoid these obvious conclusions by cherry picking citations from Plaintiffs' opening brief to winnow the inquiry to "two methods by which Defendants-Appellees used confessions of judgment to compel payment." (Defs.' Br. at 27.) Plaintiffs' claim is broader. (Pls.' Br. at 20–23.) And, even if the inquiry were focused on the narrower question of whether the confessions of

---

[1] Defendants sidestep these arguments by asserting that: (1) Plaintiffs were somehow required to bring a "stand-alone procedural due process claim" for the seizures of Mr. Sayers's property (Defs.' Br. at 28 n.5); and (2) for both Plaintiffs, counsel conceded there was no causation (*id.* at 28). Neither is true. First, Plaintiffs specifically alleged "a property interest in the amounts demanded ***and seized*** by Defendants" (App. 28; R. Doc. 9 ¶ 150 (emphasis added)), and there is no requirement that Plaintiffs assert two causes of action to challenge Defendants' scheme. Second, Defendants' suggestions that counsel "conceded" anything on standing is misleading. Plaintiffs merely agreed with the district court's observation that Plaintiffs' interest was substantially greater than that in *Mickelson v. County of Ramsey*, 823 F.3d 918 (8th Cir. 2016) (App. 303; R. Doc. 36 at 49); and stated there was no "factual recitation" to be made at oral argument supporting the preliminary injunction motion (App. 264; R. Doc. 36 at 10), not that there was no "**factual allegation**" (Defs.' Br. at 28). Simply put, Defendants' arguments are entirely unsupported.

judgment themselves cause injury, Plaintiffs sufficiently pleaded they did. Defendants do not contest that the confessions of judgment, by their very terms, require payment. (Pls.' Br. at 23, 35.) Defendants use the document, pursuant to their written policy to "collect fees for room, board and booking." (*See* App. 36; R. Doc. 9-1.) In other words, a predictable effect of the confessions of judgment was Defendants' seizure and collection of jail fees, ***per the terms of the document and pursuant to Defendants' official, written policy***. Plaintiffs need not plead more at this stage.

Under any formulation, the FAC sufficiently alleges causation.

### C. Federal courts can provide redress though monetary damages, injunctive relief, and/or declaratory relief

Plaintiffs have established redressability through a variety of available remedies: (1) declaring the confessions of judgment invalid; (2) enjoining the future use of confessions of judgment to collect jail fees; (3) and monetary damages, including nominal damages. (Pls.' Br. at 33–36.) Further, federal courts have broad equitable powers to provide effective remedies, regardless of the relief requested in the FAC.

Defendants do not respond to Plaintiffs' argument that injunctive relief barring the future use of confessions of judgment to collect jail fees would redress Plaintiffs' injuries. (Pls.' Br. at 36.) This is sufficient for the Court to hold that Plaintiffs' injuries are redressable. *See Larson*, 456 U.S. at 243 n.15 ("[T]he relevant inquiry is

whether . . . the plaintiff has shown *an* injury to himself that is likely to be redressed by a favorable decision."). Defendants' remaining arguments on redressability are easily dismissed.

*First*, Defendants argue that "[u]ndoing Plaintiffs-Appellants' confessions of judgment would not impact the fees." (Defs.' Br. at 30.) However, declaratory relief invalidating the confessions of judgment would provide redress because, as Plaintiffs have asserted and Defendants do not dispute, the documents themselves require payment. (Pls.' Br. at 23–24, 35.) If a court were to declare them invalid, Plaintiffs would be relieved of any obligation to make the payments required thereunder. (*Id.* at 35.) And Defendants could not use them to avoid the statutory process required under Iowa law. (*Id.* at 36.) That is enough for redressability.

Rather than address this obvious point, Defendants sneer that the confessions of judgment "did not create [Plaintiffs'] jail fees; staying in jail did." (Defs.' Br. at 30.) But detaining Plaintiffs does not entitle Defendants to impose and collect jail fees without due process of law. This is Defendants' choice. (*See* Pls.' Br. at 27.) The logical implication of Defendants' theory is that Plaintiffs cannot challenge their jail fees unless they challenge the fact of "staying in jail." However, there is no requirement that Plaintiffs must challenge their underlying sentences. If the requested declaratory relief would "restor[e] [the] plaintiff to a position" they were in before the complained conduct—before Defendants assessed jail fees through

11

confessions of judgment and denied Plaintiffs due process—that would provide redress. *See Planned Parenthood of N.Y. City, Inc. v. U.S. Dep't of Health & Human Servs.*, 337 F. Supp. 3d 308, 323 (S.D.N.Y. 2018).

***Second***, Plaintiffs have established that injunctive relief would provide redress to the undisputed risk of future harm. *See supra* Part I.A. "[A] person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring." *TransUnion*, 594 U.S. at 435. Therefore, in this case, "an injunction prohibiting Defendants from initiating reimbursement claims using confessions of judgment" would, at a minimum, provide redress. (*See* Pls.' Br. at 36.) By showing that injunctive relief would remedy one injury, the imminent risk of future harm, Plaintiffs satisfy redressability. *Larson*, 456 U.S. at 243 n.15.

Injunctive relief would also redress Plaintiffs' other injuries, because enjoining the "us[e of] confessions of judgment as a means of collecting jail fees" would remove the mechanism Defendants use to collect fees without due process. (Pls.' Br. at 36.) *See also Wright*, 219 F.3d at 914 (finding redressability satisfied because plaintiffs sought injunctive relief enjoining collections of incarceration fees). The injunctive relief Plaintiffs seek would restore the availability of "the statutorily required process for the collection of jail fees." (App. 29; R. Doc. 9 ¶ 153.) That remedy would redress Plaintiffs' injury of the absence of process.

***Third***, nominal damages are available to Plaintiffs, and Defendants do not dispute that "denial of procedural due process [is] actionable for nominal damages without proof of actual injury." (Pls.' Br. at 33 (citing *Carey v. Piphus*, 435 U.S. 247, 266 (1978)).) Defendants' only response is to argue that damages are not available because Plaintiffs "voluntarily paid jail fees." (Defs.' Br. at 30.) By tying the question of damages to the ultimate success of Plaintiffs' claims, Defendants ask the Court to hold Plaintiffs do not have standing because they believe the procedural due process claim will ultimately fail. (Pls.' Br. at 24–27.) The Court cannot do so. *Hughes*, 840 F.3d at 993.

***Fourth***, Plaintiffs' request for any "other and further relief as may be just and equitable" suffices to establish redressability. (App. 32; R. Doc. 9 ¶ 185.) "[A] federal court should not dismiss a meritorious constitutional claim because the complaint seeks one remedy rather than another plainly appropriate one." *Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 65–66 (1978), *accord. Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("[A]s a general rule, requesting incorrect relief is not grounds for dismissal."), *abrogated on other grounds in S.A.A. v. Geisler*, 127 F.4th 1133 (8th Cir. 2025). Federal courts can grant appropriate relief, "even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). So, even assuming the specific relief requested in the FAC would not provide redress, the district court would have authority to fashion a remedy that would.

**II.** **There is no applicable process available in state court and, even if there were, Plaintiffs need not wait for Defendants to subject them to it to have standing.**

Though raised in the context of the imagined "access-to-court claim," *see infra* Part V, Defendants insist Iowa state law would still provide Plaintiffs due process, and that the supposed availability of this process defeats standing. (*See* Defs.' Br. at 19–20, 35–36.) Defendants are wrong for myriad reasons: (1) Iowa law does not allow Plaintiffs to challenge their jail fees before, during, or after the filing of a confession of judgment; (2) this Court has explicitly rejected the argument that plaintiffs must first be subjected to some process to mount a procedural due process challenge; and (3) Defendants concede that any process would be limited to challenging confessed judgment and only after entry of judgment, which does not comply with the Fourteenth Amendment. Simply put, there is no process available in state court that would adequately provide Plaintiffs notice and an opportunity to be heard at a meaningful time and in a meaningful manner ***on their jail fees***.

***First***, Defendants' theory that Plaintiffs "have not lost the ability to defend against jail fees if they choose to" (Defs.' Br. at 30) is flatly wrong. Confessed judgment is entered by a clerk—not a judge—with no hearing and with no notice (App. 11; R. Doc. 9 ¶ 47); can only be vacated on certain grounds inapplicable here; and a motion to quash the garnishment itself would not allow individuals an opportunity to assert defenses to the jail fees.

14

Iowa law governing confessed judgment clearly states: "A judgment by confession, ***without action***, may be entered by the clerk of the district court." Iowa Code § 676.1 (emphasis added). Once judgment is entered, an individual has one year to move to vacate that judgment. Iowa R. Civ. P. 1.1013(1). A court may "correct, vacate or modify a final judgment or order" only under specific, enumerated grounds. Iowa R. Civ. P. 1.1012. None of those grounds permit an individual to assert defenses to the legality of the underlying action, such as arguments that the jail fees were incorrectly calculated or unconstitutionally excessive. (Pls.' Br. at 26.)[2] Even the only seemingly relevant ground here— "[i]rregularity or fraud" in obtaining judgment—is inapplicable, as it applies only when "a party suffers an adverse ruling due to action or inaction by the court or court personnel." *Sullins v. Iowa Dist. Ct. for Polk Cnty.*, No. 17-1310, 2019 WL 2523553, *2 (Iowa Ct. App. June 19, 2019) (quoting *In re Marriage of Cutler*, 588 N.W.2d 425, 429 (Iowa 1999)). Assuming this portion of the rule applied to Plaintiffs, it would not allow Plaintiffs to assert that Defendants acted irregularly or fraudulently in obtaining the judgment.

---

[2] Defendants do not contest the validity of Plaintiffs' defenses. (Pls.' Br. at 26.) Given these numerous defenses, Plaintiffs do not "admittedly owe" jail fees, as Defendants suggest. (Defs.' Br. at 30.)

Of course, even if Plaintiffs had a post-judgment mechanism for vacating a confessed judgment on grounds that the underlying fees were unlawful, an individual could only move to set aside that judgment if they were aware of it. That is most often not the case. Because Iowa law requires no notice, Iowa Code § 676.1 *et seq.*, most individuals subject to confessed judgment proceedings only find out about the judgment upon initiation of garnishment (App. 211, 269; R. Docs. 11-24 at 4, 36 at 15). Even if someone files a motion to quash the garnishment, "[t]heir account remains frozen . . . [and] it can often be weeks before a judge can hear the motion, and usually longer still to issue a decision. In the meantime, checks bounce, automatic payments are declined, fees are assessed, and critical bills remain unpaid." (App. 214; R. Doc. 11-24 at 7.) At that point, an individual would have suffered significantly greater deprivations of their property and, regardless, garnishment proceedings are insufficient as the sole means of satisfying due process. *See Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 340–42 (1969).

Defendants' citations to cases from over a century ago are inapposite (Defs.' Br. at 19, 36), as each involved a separate suit in equity to challenge confessed judgment, which is now unavailable under Iowa law. None of the cases Defendants cite involved a direct challenge from a signatory. *Bull v. Keenan*, 69 N.W. 433 (Iowa 1896) (separate action in equity); *Ohm v. Dickerman*, 50 Iowa 671 (1879) (same); *Mullen v. Russell*, 46 Iowa 386 (1877) (same); *Dullard v. Phelan*, 50 N.W. 204 (Iowa

16

1891) (petition of third-party non-signatory). In the most recent of those cases, the Iowa Supreme Court questioned "whether a suit in equity is a proper remedy to pursue" to invalidate a confessed judgment, but determined that issue was not adequately preserved. *Bull*, 69 N.W. at 433–34. Since then, the Iowa Supreme Court clarified that "judgments by confession, like other judgments, are not open to collateral attack, unless it be upon the ground of fraud or want of jurisdiction." *Gilman v. Heitman*, 113 N.W. 932, 935 (Iowa 1907). Later still, the Iowa Legislature created the Iowa Rules of Civil Procedure, Chapter 311 of 49th General Assembly (1941), and the current version of those rules provides for the limited means by which an individual can set aside judgments, Iowa R. Civ. P. 1.1012.

Defendants' suggestion that there remains a process available to Plaintiffs, therefore, is incorrect.[3]

**Second**, even if Defendants were correct that there is an available process, Plaintiffs need not go through that process to have standing. Defendants ignore this Court's binding precedent holding that allegations of inadequate process suffice to

---

[3] Defendants' assertion that Plaintiffs "do not even dispute such an avenue is available to them" (Defs.' Br. at 20), is entirely misplaced. Defendants deflect from Plaintiffs' allegations that *there is no process* (App. 11, 24, 25, 28; R. Doc. 9 ¶¶ 46–50, 125, 139, 152), by citing to an exchange at oral argument (Defs.' Br. at 20). During that exchange, however, Plaintiffs' counsel expressly articulated why that post-deprivation process was insufficient. (App. 269; R. Doc. 36 at 15.) Far from conceding the adequacy of such a process, Plaintiffs have always argued that any post-judgment procedure is constitutionally insufficient. (R. Doc. 22 at 12–13.)

convey standing. *See Hughes*, 840 F.3d 987. Defendants' argument—essentially, that Plaintiffs "lack standing to bring a procedural-due-process claim, because they chose not to participate in the process they attack," *id.* at 993—was soundly rejected by this Court. *Id.* at 994. Worse still, the (non-existent) process on which Defendants rely would only be available if Defendants filed confessions of judgment in court. Plaintiffs have not "willfully ignored" any process, as Defendants suggest (Defs.' Br. at 35), but rather Defendants have denied process that would otherwise be available under Iowa law. (App. 29; R. Doc. 9 ¶ 153.)

Therefore, Plaintiffs have standing regardless of Defendants' theory on state law.

***Third***, Defendants do not dispute that "a post-deprivation remedy in the form of an uncontestable confessed judgment does not suffice" under the Fourteenth Amendment. (Pls.' Br. at 48.) The Supreme Court addressed a similar argument— that post-deprivation state court proceedings suffice to provide due process—in *Fuentes v. Shevin*, 407 U.S. 67 (1972). There, the statutory process failed to provide adequate due process of law until ***after a deprivation had occurred***, "even assuming . . . [plaintiffs] had no other valid defenses." *Id.* at 87. Ultimately, the Court determined that plaintiffs were entitled to process and the purported due process waivers at issue were facially invalid. *Id.* at 94. As in *Fuentes*, Defendants took Plaintiffs' property without notice or an opportunity to be heard (App. 24, 25;

R. Doc. 9 ¶¶ 122, 133), and attempt to skirt those due process requirements (App. 21; R. Doc. 9 ¶ 100), using language that fails to advise signatories that they are waiving rights to due process (*see* App. 10; R. Doc. 9 ¶ 38). That arrangement fails to provide adequate process because it offers only post-judgment, post-deprivation proceedings to provide any opportunity to be heard. The Fourteenth Amendment does not tolerate that result, and Defendants do not even argue that it does.

Ultimately, Defendants' arguments on Iowa state law have no applicability to this appeal and, in any event, miss the mark.

### III. The sole basis for the district court's dismissal of Count 1 was an impermissible factual finding that has no basis in the law.

If the Court reaches the merits, it should reverse the district court's alternative holding that Plaintiffs failed to state a claim, as that holding was based on an improper finding of fact and the FAC sufficiently pleaded the elements of a procedural due process claim. (Pls.' Br. at 38–48.) In response, Defendants (1) do not argue they provide a process (*id.* at 47–48); (2) do not contest that the only process available, seeking to invalidate a judgment, is constitutionally infirm (*id.* at 48 (citing, *inter alia*, *Fuentes*, 407 U.S. 67)); and (3) do not dispute that the voluntariness analysis from the employment context is inapplicable here (*id.* at 43–44). Critically, they do not even address Plaintiffs' argument that payments pursuant to an involuntary payment plan are, by definition, involuntary. (*Id.* at 44.) Instead, Defendants ask this Court to affirm the district court's alternative Rule 12(b)(6)

holding on a factual basis never alleged in the FAC, unsupported by the entirety of the record, and which has no basis in the law. (Defs.' Br. at 33–35.)

Whether a deprivation took place depends on whether Plaintiffs lost property to which they had a legitimate claim of entitlement. (Pls.' Br. at 41–42.) Defendants cannot contest that Plaintiffs have a legitimate claim of entitlement to their own money, so instead they simply assert that they are excused from providing notice and an opportunity to be heard because Plaintiffs voluntarily paid. (Defs.' Br. at 33–35.) Nothing in the record supports this. (Pls.' Br. at 42–43.) Defendants' confessions of judgment, by their very terms, require payment. (*Id.* at 23–24, 35.) And, tellingly, Defendants cite to no authority holding that a claim of "voluntariness" warrants dismissing a procedural due process claim on the pleadings.

Instead, Defendants assert that the "FAC included no allegations that Defendants-Appellees compelled or coerced Plaintiffs to pay" (Defs.' Br. at 34), but there is no requirement to plead coercion and, regardless, the FAC supports the reasonable inference that Plaintiffs were indeed coerced. The Federal Rules of Civil Procedure do not "require a plaintiff to plead 'specific facts' explaining precisely how the defendant's conduct was unlawful. Rather, it is sufficient for a plaintiff to plead facts indirectly showing unlawful behavior." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009) (citation omitted). At a minimum, Plaintiffs' allegations support an inference that Defendants' scheme is inherently coercive.

20

From Defendants' seizures of cash (App. 1, 4, 9, 25; R. Doc. 9 ¶¶ 1, 11, 35, 133), to requiring the signing of non-negotiable forms before they return personal property and release an individual from jail (App. 8–9; R. Doc. 9 ¶¶ 30–42), to sending uniformed deputies to collect jail fees (App. 24; R. Doc. 9 ¶ 121), Defendants' scheme relies on coercion. Plaintiffs do not concede they are required to prove coercion to hold Defendants liable, but even if they are, such proof is not required now, at the pleading stage. (*See* Pls.' Br. at 24, 43.)

Ultimately, Defendants do not—and cannot—dispute that they have infringed on a protected property interest, the amounts demanded and collected from Plaintiffs. (App. 28; R. Doc. 9 ¶ 150.) With that, the question becomes what process is due. (Pls.' Br. at 45–48.) Defendants do not claim to provide ***any*** opportunity to be heard, either ***before or after*** seizing, demanding, and collecting Plaintiffs' money; instead, they simply assert that "due process remains available to [Plaintiffs]—if and when an actual deprivation occurs." (Defs.' Br. at 35.) The undisputed absence of process is enough to find that Plaintiffs have stated a claim. (Pls.' Br. at 45–48.)

Finally, Defendants attempt to make much of the argument that "process is not required as an end in and of itself" (Defs.' Br. at 32), but that observation has no bearing on this appeal. While it is generally correct that "[p]rocess is not an end in itself," *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983), "it is procedure that marks much of the difference between rule by law and rule by fiat," *Wisconsin v.*

21

*Constantineau*, 400 U.S. 433, 436 (1971). "Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim*, 461 U.S. at 250. So, Defendants' point only stands if Plaintiffs have no legitimate claim of entitlement to their money. Defendants make no such argument. Plaintiffs do not seek process for its own sake; rather, they demand the process to which they are constitutionally entitled so they can protect their property interests. The U.S. Constitution demands no less.

**IV.** **Defendants' proposed new rule on post-dismissal motions to amend the pleadings is unworkable and would render Rule 59 meaningless.**

Defendants offer no principled reason to affirm the denial of the Motion to Amend. They do not dispute that the district court committed reversible error when it denied post-dismissal leave to amend to correct a purported jurisdictional defect. (Pls.' Br. at 49–50.) Defendants also do not address the district court's error in failing to address prejudice. (*Id.* at 52 n.10.) On those bases alone, if the Court reaches the Motion to Amend, it should reverse.

Regardless, the Court should decline to adopt Defendants' new rule that a motion to dismiss automatically provides notice of all possible deficiencies in a complaint. (Defs.' Br. at 40.) Defendants cite nothing in the record showing that their motion to dismiss provided notice "of the possible deficiencies in the[] original complaint," *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 963 (8th Cir. 2015), and it certainly did not provide notice of the ultimate bases for the district court's ruling

(Pls.' Br. at 50–51). The best Defendants offer is that Plaintiffs should have known of the purported deficiencies in the FAC following a hearing on September 20, 2024 (Defs.' Br. at 41), but that assertion is misplaced as well. Defendants' novel proposition that questions at oral argument suffice to provide notice under Rule 59 has no basis in the law.[4] For purposes of notice under Rule 59 motions to amend, the question is not whether Plaintiffs *could have known* but when *they did know*. *Ash*, 799 F.3d at 962. Plaintiffs were not on notice of the causation and redressability issues until the Court's order.

If Defendants' theory becomes the law of this Circuit, Rule 59 motions to amend the pleadings would become virtually meaningless, as courts could deny such motions based on arguments never raised in a motion to dismiss. This would work an end-run around the Supreme Court's holding that plaintiffs "ought to be afforded an opportunity to test [their] claim on the merits," *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Accordingly, if the Court affirms the district court's standing analysis, it should reverse its denial of the Motion to Amend.

---

[4] Much of what Defendants claim should have put Plaintiffs on notice—*i.e.*, the district court's questions about "how [] the defendants actually used the confessions of judgment to collect fees" (App. 259; R. Doc. 36 at 5)—related to the preliminary injunction standard, not the FAC.

**V. Defendants' argument that the Court should dismiss Plaintiffs' nonexistent "access-to-courts" claim is irrelevant.**

Defendants' lead argument on appeal is that Plaintiffs failed to state a claim for "access-to-courts," which Defendants admit was not alleged in the FAC. (Defs.' Br. at 9–22.) This is nothing more than a distraction from the discrete issues in this appeal. The actual question before the Court is whether Plaintiffs sufficiently pleaded facts to support standing to assert a procedural due process claim. Defendants' proffered framework has no place in this appeal. *Cf. Ivey v. Audrain Cnty.*, 968 F.3d 845, 851 (8th Cir. 2020) ("The principle of party presentation counsels against adopting theories of a plaintiff's case that he does not advance, much less one that he expressly disclaims.").

Regardless, Defendants' argument is meritless in its own right because: (1) it imposes heightened pleading standards by insisting Plaintiffs' "theory of the case" must match Defendants' interpretation of the FAC (*see* Defs.' Br. at 9); (2) access-to-courts claims depend on proof of a non-frivolous, affirmative claim, which is explicitly _not_ required in procedural due process cases; and (3) Defendants admit that an access-to-courts claim would survive where, as here, a waiver is used "to effect a taking of property" (*id.* at 17).

***First***, Defendants' entire premise is flawed because it is based on the notion that Plaintiffs' "appellate ***theory of the case*** is drastically different than that presented in their ***complaint***." (*Id.* at 9 (emphasis added).) But there is no

24

requirement that Plaintiffs plead a "theory of the case." Fed. R. Civ. P. 8(a); *Johnson*, 574 U.S. at 11, 12; *Berndsen v. N.D. Univ. Sys.*, 7 F.4th 782, 789 n.6 (8th Cir. 2021). "Having informed [Defendants] of the factual basis for their complaint, [Plaintiffs] were required to do no more to stave off threshold dismissal for want of an adequate statement of their claim." *See Johnson*, 574 U.S. at 12.

**Second**, whatever its applicability here,[5] an access-to-courts framework would not countenance affirming dismissal because it would overturn decades of precedent holding that plaintiffs alleging procedural due process claims do not need to establish the merits of their underlying claims. Access-to-courts claims depend on "the named plaintiff [] identify[ing] a 'nonfrivolous,' 'arguable' underlying claim." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Not so for procedural due process claims: "The right to be heard does not depend on an advance showing that one will surely prevail at the hearing." *Fuentes*, 407 U.S. at 87; *see also Coe v. Armour Fertilizer Works*, 237 U.S. 413, 424 (1915) ("To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular

---

[5] Defendants offer no authority that would suggest that an inability to assert *defenses* to the imposition of fines and fees must be pleaded as an access-to-courts claim. (Defs.' Br. at 9–22.) Even if that were the case, Plaintiffs have pleaded not only that such defenses exist (App 5; R. Doc. 9 ¶ 16), but also that Defendants designed their policies and practices explicitly to avoid consideration of such defenses (App. 17–19; R. Doc. 9 ¶¶ 63–87).

case due process of law would have led to the same result because he had no adequate defense upon the merit.").

*Third*, even if their proposed legal framework were somehow relevant here, Defendants acknowledge that an access-to-courts claim should not be dismissed where an individual challenges "the government's subsequent use of [a] waiver to effect a taking of property." (Defs.' Br. at 17.) Plaintiffs pleaded exactly that: "[a]fter release, the Sheriff demands payment under the terms of the confession of judgment." (App. 1; R. Doc. 9 ¶ 1.)

In sum, Defendants' access-to-courts argument is a mere distraction—but even on its own terms it does not support Defendants' position on appeal.

## CONCLUSION

The Court should reverse the district court's dismissal of Count 1, vacate the district court's Rule 12(b)(6) analysis, and remand for further proceedings.

Dated: August 11, 2025

Rita Bettis Austen
Thomas Story
Shefali Aurora
ACLU of Iowa Foundation, Inc.
505 Fifth Ave., Suite 808
Des Moines, IA 50309-2317
T: (515) 207-0567
rita.bettis@aclu-ia.org
thomas.story@aclu-ia.org
shefali.aurora@aclu-ia.org

Brandon R. Underwood
Michael D. Currie
Sarah Golwitzer
Kelcy Whitaker
Fredrikson & Byron P.A.
111 East Grand Ave., Suite 301
Des Moines, IA 50309-1884
T: (515) 242-8900
bunderwood@fredlaw.com
mcurrie@fredlaw.com
sgolwitzer@fredlaw.com
kwhitaker@fredlaw.com

Respectfully submitted,

*s/ Charles Moore*
Charles Moore
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
T: (202) 861-5226
cmoore@publicjustice.net

Leslie A. Bailey
Public Justice
475 14th Street, Suite 610
Oakland, California 94612
T: (510) 622-8203
lbailey@publicjustice.net

Thomas P. Frerichs
Frerichs Law Office, P.C.
106 E. 4th Street, P.O. Box 328
Waterloo, IA 50704-0328
T: (319) 236-7204
tfrerichs@frerichslaw.com

*Counsel for Plaintiffs-Appellants*

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g) of the Federal Rules of Appellate Procedure and the Local Rules for the United States Court of Appeals for the Eighth Circuit, I certify the following:

1. This brief complies with Fed. R. App. P. 32 because, excluding the parts of the document exempted by Rule 32(f), this document contains 6,498 words.

2. This brief complies with L.R. 28A(h) because the electronic version of this brief and the addendum have been scanned for viruses and no viruses were detected.

3. This brief complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6) because the brief has been prepared in Times New Roman 14-point font using Microsoft Word.

*s/ Charles Moore*
Charles Moore
Public Justice
1620 L Street NW, Suite 630
Washington, DC 20036
T: (202) 861-5226
cmoore@publicjustice.net

**Certificate of Service**

I certify that on August 11, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all attorneys who have entered an appearance in this case.

*s/ Charles Moore*
Charles Moore